PIERRE N. BRUNELLE *vs.* LOWELL ELECTRIC LIGHT CORPORATION.

Middlesex.   March 23, 1905. — June 23, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & BRALEY, JJ.

*Contract*, Construction.   *Electric Light Company.*   *Estoppel.*

In an action against a company furnishing electricity, for personal injuries from a shock of electricity received when taking hold of a portable cord to carry an electric lamp to a part of the cellar under the plaintiff's shop, it appeared, that a contract in writing by which the defendant agreed to connect its electric system with the plaintiff's shop and to furnish electric current for a certain number of incandescent lamps of a certain power, contained the following provision : " It is agreed that all wires upon the premises of the customer to which the company's service will be connected, shall be so installed that the company may carry out this contract, and shall be kept in proper condition by the customer : that the customer will give, or obtain all necessary permission, to enable the agents of the company to carry out this contract and to enter the premises at all reasonable times, so long as any of the company's property remains therein, for the purpose of keeping in repair or removing its property or inspecting its own or the customer's wires or apparatus." *Held*, that under this contract the defendant did not owe to the plaintiff the duty of inspecting the wires, and that the clause giving the defendant the right to inspect the premises of the plaintiff was inserted for the protection of the defendant and not for that of the plaintiff.

To leave to a jury the question, whether under a certain contract in writing the customer of a company furnishing him with electric light had a right to assume that the company under the contract undertook the inspection of the plaintiff's premises, is error, the construction of the contract being a question of law for the court.

*Semble*, that one who has installed electric light wires in his premises without the permission in writing of the inspector of wires as required by a municipal ordinance, if injured by a shock of electricity from one of the wires thus illegally installed, may be precluded from maintaining an action for his injuries against the company furnishing the power if his violation of law contributed to the accident, unless the company's knowledge of this violation estops it from setting up this defence.

TORT by the proprietor of an apothecary shop on East Merrimack Street in Lowell against a corporation maintaining an electric light plant in Lowell and furnishing electricity for light, heat and power, for personal injuries from a shock of electricity received when taking hold of a portable cord to carry an electric lamp to a part of the cellar under the plaintiff's shop. Writ dated December 7, 1903.

At the trial in the Superior Court before *Wait*, J. it appeared that the portable cord was installed in the cellar in the manner described in the opinion. On October 12, 1903, the plaintiff went into his cellar, and took hold of the portable cord in order to carry the lamp to a distant part of the cellar, when he received a severe shock, was thrown to the ground, and became unconscious, in which condition he remained for some fifteen minutes. His right hand was badly burned. It was admitted that the wiring in the cellar was not established under a written permission of the inspector of wires as required by an ordinance of Lowell, which is referred to in the opinion.

The contract mentioned in the opinion was as follows:

" The Lowell Electric Light Corporation.
" Application for Electric Service.
" Lowell, Mass.,                190
" By P. N. Brunelle to the Lowell Electric Light Corporation (hereinafter called Electric Company):

" Subject to the printed terms and conditions recited on the back of this application, you will please connect your Electric System to premises No.     East Merrimack Street, and furnish Electric Current for the following: 8 16 c. p. Incandescent Lights which I agree to use during the term of one year beginning          , and pay therefore on or before $\left\{ \begin{array}{l} \text{Monday} \\ \text{the 10th day} \end{array} \right\}$ of each $\left\{ \begin{array}{l} \text{week} \\ \text{month} \end{array} \right\}$ next succeeding that for which service is charged at the following rates: eleven (11) cents per Kilo Watt hour net, as may be shown by the statement of the meter. And if not paid on or before the 10th day of each month 10 per cent. additional charge to be made.

" In case the meter reading shows a consumption amounting to less than twelve dollars per year, I further agree to pay the sum of twelve dollars per year net.

" I hereby authorize and allow the Electric Company to set up in convenient and suitable places on the above named premises, the necessary transformers, meters and appliances, and it is further agreed that no change or alteration shall be made in the number of horse power of the motors, the number or candle power of the lamps, or the wiring of the above named premises, without first obtaining the written consent of the Electric Company.

"As a guarantee for the faithful performance of this contract          hereby deposit $          , to be returned only after this contract has finally terminated and          have fully complied with all of its terms.

" It is mutually agreed that the terms and conditions printed hereon, in so far as they are not inconsistent herewith, are a part of this agreement.

" This application to become a contract binding upon the company when accepted in writing by the proper officer of the Electric Company, and no agreement or representation made by any representative of the company shall be binding upon the company unless incorporated in this application.

"P. N. Brunelle.

"Accepted this 15 day of May, 1903.
    " The Lowell Electric Light Corporation,
            "By N. T. Wilcox, Manager.
        " Terms and Conditions.

"All lamps, meters, wires, and other appliances furnished by the company shall remain the property of the company.   It is agreed that all wires upon the premises of the customer to which the company's service will be connected, shall be so installed that the company may carry out this contract, and shall be kept in proper condition by the customer: that the customer will give, or obtain all necessary permission, to enable the agents of the company to carry out this contract and to enter the premises at all reasonable times, so long as any of the company's property remains therein, for the purpose of keeping in repair or removing its property or inspecting its own or the customer's wires or apparatus, and the customer will not permit access for removal of property, to parties other than its employees or the authorized representatives of the company, or persons duly authorized by law."

The defendant asked for various rulings, which were refused by the judge.

The fourteenth ruling requested, which was refused and which the court holds should have been given as an instruction to the jury, was as follows:

"There is nothing in the terms of the written contract between the plaintiff and the defendant in reference to lighting the store of the plaintiff which imposed upon the defendant any duty of inspection or examination of the wires, portable cord and appliances in the cellar of the plaintiff and belonging to the plaintiff, although they were attached to the wiring system of the same store belonging to the plaintiff at the time that said contract was made."

The jury returned a verdict for the plaintiff in the sum of $4,995; and the defendant alleged exceptions.

*W. H. Bent*, for the defendant.

*J. J. Hogan*, for the plaintiff.

HAMMOND, J.　In 1893 the plaintiff began the use of electricity for lighting his store upon the ground floor, and such use was continued until January 13, 1903, when it was stopped until May 13, 1903, when it was renewed under the contract of that date.　In May, 1902, the plaintiff made an extension of his wiring into the cellar of his store.　A wire was attached to the inside wiring belonging to the plaintiff, near a door leading into the cellar, and was extended, in the form of a flexible cord about fifteen feet long, into the cellar.　At the end of the cord was a lamp consisting of a socket and bulb.　When not in use the cord was kept suspended over a hook.　There was no fuse in any part of this extension, nor between it and the other wiring inside the plaintiff's store.　There was a switch near the top of the cellar stairs, which could be turned so as to light the lamp, and in using the lamp it was customary to turn on the light by means of this switch, take the flexible cord down from the hook and carry the lamp wherever needed in the cellar within the limit of the length of the cord.　In making this extension the plaintiff did not ask leave of or notify the defendant.　The inside wiring of the store, excepting fuses, was installed by the plaintiff, and all the wires, lamps and other paraphernalia inside the store excepting the fuses, fuse-box and meter were his.

It was in dispute whether the defendant knew of the cellar lamp.

Under these circumstances, the contract of May 13, 1903, was made. By its terms the defendant was to connect its electric system to the plaintiff's store and furnish electric current for eight incandescent lamps, each of sixteen candle power, and was authorized by the plaintiff to set up in convenient and suitable places on the premises the necessary transformers, meters and appliances; and it was further agreed that "no change or alteration" should "be made in the number of horse power of the motors, the number or candle power of the lamps, or the wiring of the . . . premises, without first obtaining the written consent of the" defendant. All lamps, meters, wires, and other appliances furnished by the company were to remain its property. It was further agreed "that all wires upon the premises of the customer to which the company's service will be connected, shall be so installed that the company may carry out this contract, and shall be kept in proper condition by the customer." Then follows the provision that "the customer will give, or obtain all necessary permission, to enable the agents of the company to carry out this contract and to enter the premises at all reasonable times, so long as any of the company's property remains therein, for the purpose of keeping in repair or removing its property or inspecting its own or the customer's wires or apparatus."

We are of opinion that under this contract the defendant did not owe to the plaintiff the duty of inspecting the wires and apparatus belonging to him. The duty of keeping such wires and apparatus in proper condition rested upon him by the express language of the contract, and by necessary implication there was imposed upon him the obligation to use due care in its performance. It is plain that such care would involve proper inspection. The right reserved to the defendant to inspect the property of the plaintiff was not inserted for his protection but for that of the defendant. The provision gave to the defendant a right to be exercised in its own interest, and did not impose upon it a duty to be performed in the interest of the plaintiff. The fourteenth ruling requested by the defendant should therefore have been given. The question of the construction of the

contract was for the court, and that portion of the charge which submitted to the jury the question whether the plaintiff had a right to assume that the defendant undertook under the contract the inspection of the premises, and which described the degree of care which would be required under that assumption was erroneous in law, and was prejudicial to the defendant upon a material point in its case.

In view of the conclusion to which we have come upon this branch of the case, it becomes unnecessary to consider at length the questions arising upon the other grounds of defence, inasmuch as it cannot now be foreseen what shape they may take at another trial. It may be stated however that the extension made in May, 1902, was in plain violation of the ordinance, since it was made without the written permission of the inspector of wires. § 9. The plaintiff thereby violated the ordinance within the meaning of § 14, which provides a penalty to be inflicted upon "whoever violates" any of its provisions. The case is clearly distinguishable from the class of cases of which *Perry* v. *Bangs*, 161 Mass. 35, upon which the plaintiff relies, is a type. It is further to be observed that while the violation of law by a defendant, although evidence of his negligence, is not conclusive even when the illegal act contributes to the injury, (*Hanlon* v. *South Boston Horse Railroad*, 129 Mass. 310, and cases there cited,) yet such violation on the part of the plaintiff, which contributes directly and proximately to the injury received by him, is in general a bar to his recovery. "He is precluded from recovering, on the ground that the court will not lend its aid to one whose violation of law is the foundation of his claim." Knowlton, J. in *Newcomb* v. *Boston Protective Department*, 146 Mass. 596, 602. See also cases cited in that case. Whether the plaintiff's violation of law contributed to the accident, and whether there is or could be anything in the knowledge of the defendant which would estop it from setting up that defence, it is not profitable now to consider.

*Exceptions sustained.*