## MICHAEL MCCARTHY vs. WILLIE W. MORSE & others.

Suffolk.   November 15, 1907. — February 26, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Negligence,* Voluntarily incurring danger in exigency, Violation of ordinance, Proximate cause.

In an action for personal injuries by a foreman in the employ of the water department of a city against the owner of a horse and wagon, whose driver negligently started the horse suddenly, thereby causing the wagon to strike a temporary railing of a temporary bridge and to push it against the plaintiff so as to knock him off the bridge, it appeared that the bridge had been constructed the day before under the direction of the plaintiff at a junction of two public streets, in order to provide a passage for travellers over a trench which had been excavated by men under the charge of the plaintiff, that on each side of the bridge was a succession of light wooden horses about two feet wide at the base and set about two feet in from the edge of the bridge but not attached to it, that these wooden horses were connected by planks nailed on their tops so as to form a continuous line on each side of the bridge, that just before the accident the plaintiff was standing upon a bank of earth near the bridge and saw the defendant's horse and wagon and another horse and wagon trying to pass each other on the bridge headed in opposite directions, that there was loud talk between the drivers and the hubs of the wheels were so situated that the wagons could not pass without coming in collision, that the plaintiff, observing this situation, jumped between the edge of the bridge and the line of wooden horses opposite the horse of the defendant, that it was part of his duty as foreman to keep the bridge free from obstruction and clear for the purpose of travel, particularly in view of its possible use by the fire department, and that in pursuance of this duty he went to move the line of wooden horses in order to make room for the wagons to pass, that, while he was taking hold of a wooden horse to move it, the defendant's driver whipped his horse, causing him to start sharply and suddenly and the wagon to strike the wooden horse and throw it against the plaintiff, knocking him into the trench and causing his injuries. *Held,* that the question whether the plaintiff was in the exercise of due care was for the jury, who should take into consideration the plaintiff's duty and the exigency under which he acted as well as the obviousness of the danger and the extent of the risk.

In an action for personal injuries by a foreman in the employment of the water department of a city against the owner of a horse and wagon, whose driver negligently started the horse suddenly, thereby causing the wagon to strike the temporary railing of a temporary bridge and push it against the plaintiff so as to knock him off the bridge, it appeared that the bridge had been constructed the day before under the direction of the plaintiff at a junction of two public streets, in order to provide a passage for travellers over a trench which had been excavated by men under the charge of the plaintiff, that an ordinance of the city prohibited the excavation or obstruction of any street of the city without a permit from the superintendent of streets, that the plaintiff received his orders from

the superintendent of the water department, that a permit for the work had been issued by the superintendent of streets to the water department, but there was evidence that it had expired by its limitation before the day of the accident and had not been renewed. The defendant contended that for this reason the plaintiff was not rightfully on the bridge in the course of his duties and therefore could not recover. *Held,* that, although the violation of the ordinance might be considered by the jury as evidence of negligence, the fact that the plaintiff was engaged upon the work without a permit was not necessarily the direct and proximate cause of his injury nor was he obliged to found his action upon his violation of law, and that it was a question for the jury whether the plaintiff's violation of the ordinance, in view of the other evidence in regard to the plaintiff's conduct, showed such negligence as to preclude him from recovery.

TORT, against Willie W. Morse and three others, copartners doing business under the firm name of Johnson and Company, and George Sanderson, for personal injuries incurred on October 27, 1904, in the manner described in the opinion. Writ dated November 10, 1904.

At the trial in the Superior Court before *Bond,* J., the defendants constituting the firm of Johnson and Company asked the judge for twenty-six rulings, of which nineteen were refused by the judge. The rulings the exceptions to the refusal of which were argued by the defendant were as follows : ﹀

2. Upon all the evidence the plaintiff was not in the exercise of due care.

3. Upon all the evidence the plaintiff assumed the risk of injury and cannot recover.

4. There is no sufficient evidence to warrant the jury in finding the defendants constituting Johnson and Company are liable and the plaintiff cannot recover against them.

6. On the pleadings and the proof the plaintiff cannot recover against the defendants constituting Johnson and Company.

8. The · plaintiff was guilty of contributory negligence and cannot recover.

19. If the plaintiff knew the situation and the danger of being knocked off the bridge if the team started up against or backed against or was knocked against the wooden horse and voluntarily assumed the risk, then he cannot recover.

21. Upon all the evidence the jury would not be warranted in finding the defendants constituting Johnson and Company liable and the plaintiff cannot recover against them.

22. [There was a violation of the city ordinances in that there

was no permit from the superintendent of streets in force at the time of the accident for the water department to open and occupy the street and maintain the bridge,] and the plaintiff was not an employee of the city rightfully on the bridge in the course of his duties as such employee.

The part of 22 in brackets was given by the judge, only the last part being refused.

24. The plaintiff voluntarily exposed himself to danger and cannot recover.

25. If the jury find that the plaintiff knew or could by the use of due care have known of the condition of the bridge and the dangers incident to going on to the bridge where he did and the chances of being knocked off by Johnson and Company's team knocking the wooden horse against him as was done here and voluntarily assumed the risk he cannot recover.

The jury returned a verdict for the defendant Sanderson, and against the defendants constituting the firm of Johnson and Company returned a verdict for the plaintiff in the sum of $4,000. The defendants constituting Johnson and Company alleged exceptions.

*W. I. Badger*, for Johnson and Company.

*A. K. Cohen*, for the plaintiff.

RUGG, J.  This is an action of tort by a foreman in the employ of the water department of the city of Boston, for injuries sustained while attempting to move a wooden railing of a temporary bridge about twenty-four feet wide and thirteen feet long, which spanned a trench eight feet in depth, excavated by men in charge of the plaintiff. The bridge had been erected the day before under the direction of the plaintiff at a junction of two public streets, in order to provide a passage for travellers over the excavation. On each side of the bridge and extending somewhat beyond it at both ends was a railing, which consisted of light wooden horses two feet wide at the base, resting upon but not attached to the floor of the bridge, and about two feet in from its edge, connected by planks nailed on their tops so as to form a continuous line. Either row of wooden horses could be moved by taking hold of it anywhere. Just before the accident the plaintiff, who was standing upon a bank of earth near the trench and bridge, saw two wagons, one belonging to each of the

defendants, standing close together on the bridge but headed in opposite directions. The evidence was conflicting as to the precise position of each wagon, but there was loud talk between the respective drivers, and the hubs of the two wagons were so situated that they could not pass without collision. There was evidence tending to show that the plaintiff, observing this situation, jumped upon the bridge between its edge and the wooden horses opposite the team of one of the defendants, in order to move the wooden horse nearer to the edge of the bridge, and thus give more room to pass, and that it was a part of his duties as foreman to keep the bridge " free from obstruction and clear for the purpose of travel, particularly with the view of giving free access to the engines of the Boston fire department in case of fire and that in pursuance of this duty he went to move the wooden saw horse . . . for the purpose of allowing the teams to go over the bridge and clear the way for travel," and that the driver nearer the railing backed his horse a few inches three times, in order to allow the other wagon to clear and pass, and that, this end not being attained, both vehicles started together, as the plaintiff was taking hold of the wooden horse to move it so as to make wider the passageway on the bridge, and this driver, looking toward the plaintiff, whipped his horse, causing him to start sharply and suddenly and the wagon to strike the wooden horse and throw it against the plaintiff, thereby knocking him into the trench and causing his injuries.

A verdict was rendered for the plaintiff, and the exceptions of the defendants constituting the firm of Johnson and Company bring the case here. All the exceptions, except those relating to the plaintiff's due care and assumption of risk and the effect of his violation of the city ordinance, are either expressly waived or are treated as waived because not argued.

There was evidence that it was a part of the duty of the plaintiff to see that the bridge was not obstructed, and was kept open for travel. When he saw that two wagons were in imminent danger of locking hubs, and that their drivers were not preserving a calm temper about it, it was not unreasonable for him to assume that a blockade might ensue unless something was done to prevent it, and that if he should widen the roadway a few inches, by moving outward the fence, all trouble might be avoided. It

was in the line of his duty to bring about this result by any reasonable effort. It cannot be said, as matter of law, that he failed to exercise due care in standing upon the space between the edge of the bridge and the railing in order to move the latter the short distance necessary to enable the wagons to pass. The space was two feet, and the movement outward of the railing a few inches would afford sufficient room in the travelled way. If he had gone inside the rail he would have been in the way of one of the vehicles, and by remaining upon the outside he could be more observant not to move the railing so far as to precipitate it into the trench. Moreover, he could rightfully assume that there would be no such active carelessness on the part of either of the drivers as violently to come in collision with the railing with force sufficient to throw him down. His duty called him to a place of some danger, created, not by his own fault, but by the acts of those, for whom he was in no wise responsible. Whether he was careless or not depends in considerable degree upon the exigency in which he acted, and upon the harm he then ought to have foreseen, and not so much upon what the event has shown was the real danger. Intelligent appreciation of the risk cannot necessarily be predicated upon a mere knowledge of some danger. *Linnehan* v. *Sampson*, 126 Mass. 506. The doctrine of assumption of risk, apart from contract, has no application to cases where there is no adequate understanding of the extent of the exposure to injury. Under these circumstances it was for the jury, under appropriate instructions, to weigh the somewhat conflicting considerations of stress of duty, obviousness of the danger, and extent of the risk.

It was assumed that the work upon which the plaintiff was engaged was being carried on in violation of a city ordinance. Certain sections of an ordinance were introduced in evidence, but there was no penalty clause offered, and therefore it might have been merely directory and not penal. The ordinance prohibited the excavation or obstruction of any street in Boston without a permit from the superintendent of streets. The plaintiff was not himself in charge of a city department, but received his orders from the superintendent of the water department. A permit for this work had been issued, but there was evidence tending to show that it had expired by its own limita-

tion, and had not been renewed. Under these circumstances the illegal act of the plaintiff in being engaged upon this work without a permit was not necessarily the direct and proximate cause of his injury, nor was he obliged to found his action upon his own violation of law. It was evidence of negligence, which might, or might not, preclude him from recovery, according to the view which the jury took of his conduct respecting the injury as a whole, including his violation of the ordinance. The case falls within the class of which *Newcomb* v. *Boston Protective Department,* 146 Mass. 596, and *Finnegan* v. *Winslow Skate Co.* 189 Mass. 580, are examples, rather than in that of *Banks* v. *Highland Street Railway,* 136 Mass. 485, and *Brunelle* v. *Lowell Electric Light Co.* 188 Mass. 493.

*Exceptions overruled.*