ROY M. THORP *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Middlesex.  January 21, 1927. — May 19, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Negligence*, Contributory, In use of highway.

One, who had owned and had driven motor vehicles for hundreds of thousands of miles and, while riding at the right hand end of the driver's seat in the cab of a motor truck driven by the owner's employee with whom he had a business arrangement for its use, at a location and on a street which bore a great deal of traffic both by street cars and by other vehicles, made no remonstrance and did nothing to avoid the consequent injury when the driver of the truck, in violation of G. L. c. 89, §§ 4, 5, in crowded traffic and with his view ahead obstructed, turned to the left of a street car going in the same direction as the truck and to the left of the middle of the street, which was narrow, and unnecessarily tried to pass that street car before it met another street car approaching on the other track, must be found to have been guilty of negligence which contributed to an injury received by him when the truck was struck by the approaching street car, and to be precluded from maintaining an action against the street railway company.

TORT for personal injuries. Writ dated December 13, 1922.

In the Superior Court, the action was tried before *Keating,* J.   Material evidence is stated in the opinion.   The judge denied a motion that a verdict be ordered for the defendant.   The jury found for the plaintiff in the sum of $10,983.   The defendant alleged exceptions.

*F. J. Carney,* (*J. A. Canavan* with him,) for the defendant.

*J. T. Connolly,* for the plaintiff.

WAIT, J.   The defendant contends that the trial judge erred in denying its motion that the jury be directed to return a verdict for the defendant.   The bill of exceptions sets out no evidence in regard to damages, but purports to contain all the material evidence upon the issues of negligence and of due care.   That evidence is contradictory.   It was for the jury to determine the truth; but if evidence which was not contradicted, or which bound the plaintiff, disclosed facts that, as matter of law, precluded recovery, then it was the duty of the judge to direct a verdict.

The evidence, taken most strongly for the plaintiff, would justify finding facts as follows: The plaintiff was seated on the right hand side of the seat in the cab of a White motor truck which belonged to the Davis Ice Cream Company, and was driven by its servant Callahan.   He had been using the truck for his own advantage by arrangement with Callahan, and, his purpose accomplished, was returning toward his place of business and that of the Ice Cream Company.   Callahan chose the route of the return.   One of his employees, a truck driver, was seated at his left, and Callahan sat next at the steering wheel on the extreme left of the seat, driving the truck.   The plaintiff was blind in his left eye.   He owned and had driven trucks hundreds of thousands of miles and was familiar with the place of the accident.   He knew that Prospect Street, Cambridge, bore a great deal of traffic, both of street cars and other vehicles; that it was double tracked for electric cars; that on either side of the rails there was scant room for a motor truck between an electric car and poles at the edge of the sidewalk; that there was a "dead stop" for electric cars before they crossed Harvard Street in either direction; that Harvard Street crossed Prospect Street at about right angles; that

the two streets were nearly equal in width — uncontradicted evidence showing Harvard Street to be thirty-three feet, and Prospect Street thirty-three feet, four inches wide; that, at varying distances, other streets crossed or ran into Prospect Street.

The truck was passing along Prospect Street going toward its junction with Massachusetts Avenue at Central Square, and was two or three hundred feet from the intersection with Harvard Street when the plaintiff, as he testified, saw an electric car headed toward Central Square standing near Harvard Street ahead of him, with a closed team at its right. All were stopped.   The truck kept on till near them, when it also came to a momentary stop and then, as the first automobile, followed by the second, a Ford, started to the left to pass the standing electric car, it also went on, turning to its left and following behind the Ford on the outbound track, as we shall call the track used by cars coming from Central Square.   This brought it to the left of the middle of Prospect Street, and at a place where the view along the street was obstructed by the car, the automobiles and the closed team. The movement was in direct disobedience of the statute, now G. L. c. 89, § 4, which reads: "Whenever on any way, public or private, there is not an unobstructed view of the road for at least one hundred yards, the driver of every vehicle shall keep his vehicle on the right of the middle of the traveled part of the way, whenever it is safe and practicable so to do."   Section 5 makes a violation of § 4 an offence punishable by fine, and subjects the offender to civil action for any damage caused by his act.

The truck went on.   When it was at about the middle of the electric car on the track at its right, that car started and went forward sounding its gong in warning.   The plaintiff expressly waived any claim that those operating this car were negligent.   About as the car started, the plaintiff saw an electric car coming toward him on the outbound track. This outbound car was then beyond Harvard Street and St. Paul Street which enters Prospect Street from the left as he was going, and at a distance not stated in the testimony but considerably more than two hundred feet from Harvard

Street, as facts in the evidence demonstrate. The truck pressed forward beside the moving car at its right. The plaintiff saw the first automobile cross to its right in Harvard Street ahead of the inbound electric car. He saw the Ford gather speed and shoot on till it also turned to its right ahead of the inbound car, "squeezing by" the outbound electric car in safety at a point fixed by other witnesses at not less than fifty feet beyond Harvard Street. He was looking at the inbound car beside him. At one time he was ahead of the motorman and waved to him to let them pass ahead; but the truck slowed and dropped back along the car until it stopped as the tail of the inbound car was abreast him, and truck and outbound car came together. He was thrown backward and injured. He testified that when the truck stopped, the outbound car was one hundred feet away. The truck and car were in nearly head on collision, and neither moved any considerable distance after the impact. The plaintiff spoke no word to Callahan from first to last. He did nothing other than wave and call to the inbound motorman. He could not spring out to the right. He knew of the approaching outbound car from the point where the inbound car started on one side, to the point of collision on the other side, of Harvard Street.

Obviously, on this evidence, supplemented as it was by further testimony that the space to the left of all the tracks was blocked by a standing or approaching automobile, so that it was impossible to go to the left of the outbound car, Callahan, had he been injured, could not have recovered. He was where he had no right to be, and had acted in violation of a penal statute in getting there. This conduct contributed to the injury. *Newcomb* v. *Boston Protective Department,* 146 Mass. 596, 602. *Brunelle* v. *Lowell Electric Light Corp.* 188 Mass. 493, 498.

Without passing upon the question whether Callahan was at the moment a servant of the plaintiff, or whether they were then engaged in a common undertaking, we hold, as matter of law, that upon the facts disclosed the plaintiff could not be found to be in the exercise of due care. He made no remonstrance when, in a narrow street with view ob-

structed and wholly unnecessarily, the truck turned to the left of the middle of the road, nor when it moved toward an oncoming car on the same track in a race to pass in front of the car beside it. There was no reason why the truck could not drop back to its proper place in the street behind the inbound car. He knew all the situation, and did nothing to avoid danger. His conduct cannot be found consistent with the due care of a reasonably prudent man.

The case is governed by the principles laid down in *Schultz* v. *Old Colony Street Railway*, 193 Mass. 309. *Lundergan* v. *New York Central & Hudson River Railroad*, 203 Mass. 460. *Pigeon* v. *Massachusetts Northeastern Street Railway*, 230 Mass. 392. *Morel* v. *New York, New Haven & Hartford Railroad*, 238 Mass. 392. It is wholly different on its facts from *Chadbourne* v. *Springfield Street Railway*, 199 Mass 574.

This renders it unnecessary to consider whether there was evidence that the motorman of the outbound car was negligent. Verdict for the defendant should have been directed. The exceptions must be sustained, and, pursuant to G. L. c. 231, § 122, judgment should enter for the defendant.

*So ordered.*