ALPHONSE M. JOLY *vs.* CITY OF SALEM.

Essex. May 20, 1931. — June 30, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Damages,* For property taken or damaged under statutory authority. *Eminent Domain. Nuisance. Salem Harbor.*

At the trial of a petition by an owner of filled flats for the assessment of damages due to a taking thereof by the city of Salem under St. 1928, c. 364, where it appeared that the petitioner had owned the flats for twenty years, that, without any permit or license having been granted by the department of public works of the Commonwealth or the War Department of the United States to the petitioner, the respondent, or to any one else, filling had been dumped there and that the petitioner wanted the filling, and had no objection to it, the trial judge should have made the following rulings, asked for by the respondent:

(1) that the petitioner was not entitled to recover anything for an enhanced value to the flats caused by any illegal filling;

(2) that the petitioner could recover only the fair market value of the original flats under the filling;

(3) that the value of the flats as filled land could not be taken into consideration as an element of damages; and

(4) that the jury could allow the petitioner nothing on account of loss or impairment of privilege which he was enjoying contrary to law.

At the trial of a petition, brought in June, 1929, for the assessment of damages due to a taking of unfilled flats by the city of Salem under St. 1928, c. 364, the judge admitted in evidence without objection by the respondent a license granted to the petitioner in 1911 to fill certain flats in Salem Harbor not included in the petition. The respondent introduced evidence showing the cubic contents of water to be displaced by the filling of the flats described in the petition and the cost of building a retaining wall or bulkhead; and G. L. c. 91, § 21, requiring the department of public works to determine the amount of compensation to be paid by "the persons who cause such displacement" of tidewater was before the jury. The judge excluded evidence offered by the respondent of sundry licenses issued by the department of public works since 1921, including two licenses issued in 1929, for filling in Salem Harbor, each showing a charge made for tidewater displacements and that the department required a wall or bulkhead to hold the filling, the evidence being offered to show an unvarying practice of the department under G. L. c. 91, § 21. *Held*, that

(1) Such practice of the department, if proved, would have raised a reasonable presumption that a demand of compensation for such a license was the rule of the department and that the granting of a license without compensation was a rare exception;

(2) The fact that compensation would probably be required as a condition to the issuance of a license to displace tidewater by filling flats had a material bearing upon the value of the unfilled flats for mercantile purposes and other uses to which filled flats might be adapted; and the evidence should have been admitted.

At the trial above described, the judge properly refused to give rulings, asked for by the respondent, to the effect that St. 1928, c. 364, "excluded the petitioner from securing a license from the department of public works to fill his flats and the jury should exclude from their estimate of damages any consideration of value which might accrue to the petitioner by securing a license from the State or a permit from the Federal government to fill his flats"; that such statute terminated the chance and probability that the petitioner ever would obtain a license or permit to fill his flats; or that the "petitioner's damages as to flats taken is the fair market value of the flats as of the date of taking disregarding all enhanced value which might accrue to the petitioner by filling his flats."

It was proper for the judge at the trial above described to charge the jury that "In estimating the value of these flats the jury should consider the fair market value of the flats at the time they were taken over by the respondent"; that they "should consider the use to which they could be put by the petitioner"; that he is "entitled to recover the fair market value of the flats as" of the date of the taking; that it was for the jury to say "what if any improvements these have, that is with regard to the tidewater displacement, and the cost thereof . . . what help the testimony as to the cost of building a retaining wall and the possibility or probability of assessment of tidewater displacement by either or both the State and the Federal government has upon the fair market value of the flats of the petitioner on the date of the taking."

PETITION, filed in the Superior Court for the county of Essex on June 26, 1929, for assessment of damages due to a taking of land of the petitioner by the respondent.

In the Superior Court, the action was tried before *Pinanski*, J. Material evidence and rulings made and instructions given by the judge are described in the opinion.

There was a verdict for the petitioner in the sum of $12,-465.05. The respondent alleged exceptions.

*W. A. Pew*, City Solicitor, for the respondent.

*J. W. Sullivan*, (*J. F. Doyle* with him,) for the petitioner.

PIERCE, J. This is a petition to assess damages for the taking, by the city of Salem, of certain filled flats and other

flats in Palmer Cove, Salem, the property of the plaintiff, under St. 1928, c. 364. This act was accepted by the defendant on June 14, 1928, and the petitioner's land was duly taken on August 9, 1928. The respondent, thereupon, secured a license from the department of public works and a permit from the war department to fill these flats. On this petition no question is or properly could be raised as to the validity of the taking. The jury assessed damages, and the respondent brings the case before this court on exceptions which pertain to damages only.

The petitioner's property which was taken by the respondent consists of fourteen thousand seven hundred square feet of filled flats, and two pieces of unfilled flats. The petitioner had owned the flats taken for at least twenty years and had lived for twenty years near that part of Salem Harbor known as Palmer Cove. It is conceded by the petitioner that he never had a license from the department of public works of the Commonwealth of Massachusetts or a permit from the War Department of the United States to fill any part of the fourteen thousand seven hundred square feet of flats, and on the evidence shown in the record the jury would have been warranted in inferring, and therefrom finding, that neither the respondent nor any one had ever had such a license and permit. Respecting certain fillings by the respondent, it appears in the bill of exceptions that it had, previous to the taking of the petitioner's land, filled certain flats of its own in Palmer Cove, but that all "filling directed by the city had been under licenses and permits." The fourteen thousand seven hundred square feet of filled land were formerly tidewater flats in that part of Salem Harbor known as Palmer Cove. Filling had been dumped on the flats taken ever since the petitioner bought the land, and on the fourteen thousand seven hundred square feet of land "since the Salem Fire in 1914 by the public." The petitioner testified "the city of Salem and most everybody that wanted to dump[ed] there." He further testified that he "knew . . . [the filling] had been going on"; that he had not forbidden dumping thereon; that his consent or permission had never been asked; that he "saw them

dumping there"; that he did not care "whether they were on . . . [his] land or . . . [his] neighbor's"; that "they were filling just the same as any other contractor"; that he wanted the filling; that he had no objection to it at all. On the above testimony the jury would have been warranted in finding that the petitioner knew of the filling and that ever since he bought the land he had been willing to let it be filled in.

Sections 14, 21, and 23, of G. L. c. 91, were introduced in evidence and read to the jury, as were §§ 403, 404, and 406, of the National Code Annotated, and the jury were told by the judge that "The test and criterion whether a body of water is navigable is the capability of use in its natural state for purposes of commerce and transportation." No harbor line has been established in Palmer Cove.

At the conclusion of the evidence the respondent requested the judge to rule (1) that the petitioner was not entitled to recover anything for an enhanced value to the fourteen thousand seven hundred square feet of flats caused by any illegal filling; (2) that the petitioner can recover only the fair market value of the original flats under the filling; (3) that the value of the flats as filled land cannot be taken into consideration as an element of damages; and (4) that the jury can allow the petitioner nothing on account of loss or impairment of privilege which he is enjoying contrary to law.

The judge refused the above requests and charged the jury: "You recall the provisions of law I have read to you from the statutes as I have given it to you; I charge you that if you find upon all the facts in this case and applying the law as I have given it to you, that the filling of these uplands so called of fourteen thousand seven hundred square feet, was illegal — in other words that the governmental authorities could have required the owner to remove the same, — then you may say, if you find that to be the fact; if you find that upon the facts and upon the law as I have given to you it was illegal filling, then you have the right to say that the presence of this illegal filling on the area of fourteen thousand seven hundred square feet created

an encumbrance, or a restriction on the ownership. So you, Mr. Foreman and gentlemen, may say, if you find it to be a fact, determining the value of the petitioner's uplands or filled land, the area of fourteen thousand seven hundred square feet, and you may consider that as an element in fixing the petitioner's damages for this filled land or uplands; but you have got to determine the facts about it first, and then apply the law as I have given it to you."

At the end of the charge the following colloquy took place at the bench: COUNSEL FOR RESPONDENT: "You left it to the jury to say whether or not the filling was a public nuisance; you left them to say 'if it was a public nuisance, it was a cloud on the title.' It is *de facto* a public nuisance." THE JUDGE: "What I did, I left it to them, having read them the law, to determine the facts, and to say whether it was illegal, what you called an illegal fill. The statute said if filled without permission it is a public nuisance. Whether he is entitled to a specific charge I don't think I will do anything about it." COUNSEL FOR RESPONDENT: "Then your Honor will save my exception to what I am claiming. What I mean to say is that c. 91, § 23 makes a filling of land, or flats without a license a public nuisance; the same is true of the Federal statutes; without a permit I say that this land was filled without either a permit or a license, therefore it is *de facto* a public nuisance, and the jury has a right to consider that. Then I asked your Honor to rule that the petitioner can recover only for the value of his flats, as flats, and not filled." THE JUDGE: "That I haven't given." The judge again addressed the jury and said: "Mr. Foreman and gentlemen, to repeat, I am going to read the section of the General Laws under c. 91, § 23: 'Every erection made and all work done within tidewater . . . not authorized by the general court or by the division, or made or done in a manner not sanctioned by the division, if a license is required as hereinbefore provided, shall be considered a public nuisance.' A similar provision of the Federal law so that, if you, Mr. Foreman and gentlemen, find that this area of fourteen thousand seven hundred

feet of uplands or filled land was filled without a permit or power or license from either or both the State or Federal government, then I charge you that would be a filling — a public nuisance, and that . . . you have a right to take into consideration in determining the value of these uplands or filled land, with the fact and the law as I have just given it to you, what if any diminution in the value of that filled land you say arose from this situation, — this fact and the law. In other words, as I put it before, if the filling was illegal, what encumbrance or restriction of ownership; what diminution of the petitioner's title should be considered by you in assessing the petitioner's damages." The respondent excepted to the judge's refusal to give the requests, *supra,* and also to the judge's charge inconsistent with said requests.

It is obvious the respondent's requests were not given in form or substance; and it is plain that the theory on which the judge allowed the jury to assess the damages was in direct opposition to that which the respondent contends was the rule of law applicable to the facts of this case.

It is the contention of the petitioner that it was the duty of the respondent to produce proof to the effect that nobody ever had a license to fill in the said fourteen thousand seven hundred square feet of flats, and that in the absence of such proof the judge properly refused to grant the above requests; that in any event the subject matter involved a question of fact whether the filling in of the fourteen thousand seven hundred square feet was illegal. It is not controverted that the fourteen thousand seven hundred square feet of flats were filled by some one, and that such filling was a public nuisance which was subject to abatement unless the flats were filled under a license of the department of public works of this Commonwealth and under a permit from the War Department of the United States. Enough is here shown to negative the possibility of any just finding that the filling for which the petitioner seeks to increase the amount of his damages was made under any license. On the evidence from the petitioner himself it appeared that the filling had been done without a license. He was bound by his own testimony. *Sullivan* v. *Boston Elevated Railway,* 224 Mass. 405. No one

could get a license to fill the flats of the petitioner except the petitioner himself or some one expressly authorized by him. It is settled, with some possible exceptions, that nothing can be allowed by way of compensation for privileges which the owner of land taken enjoys contrary to law or to public right. *Union Depot, Street Railway & Transfer Co. of Stillwater* v. *Brunswick,* 31 Minn. 297, 302. *Diedrich* v. *Northwestern Union Railway,* 42 Wis. 248. *Kingsland* v. *Mayor, Aldermen & Commonalty of New York,* 110 N. Y. 569. The requested rulings should have been given, in substance, and the exceptions saved thereto must be sustained.

As to the one hundred twelve thousand two hundred square feet of unfilled land, the respondent offered a copy and plan of a license issued by the department of public works of the Commonwealth dated November 19, 1929. The license authorized one St. Pierre, under G. L. c. 91, to build and maintain a sea wall and fill solid in Salem Harbor flats in conformity with the plan accompanying the petition. This license provided that the amount of tidewater displaced by the work authorized should be ascertained and that St. Pierre should pay therefor into the treasury of the Commonwealth a stated sum of money for each cubic yard so displaced. The land referred to in this license was a parcel of flats just south of the parcel of flats for which the petitioner claims damages. The judge excluded the evidence and the respondent excepted. The respondent also introduced evidence that the department of public works, on November 12, 1929, issued a license to the Salem Terminal Corporation to build a wall and to fill flats, in which the Commonwealth charged for tidewater displaced. This evidence was also excluded and the respondent excepted. The respondent called the secretary of the department of public works, who had with him all licenses issued by the department for filling in Salem Harbor, nine in number, since 1921. Each showed a charge made for tidewater displacements and that the department required a wall or bulkhead to hold the filling. The respondent offered these licenses to show the requirements of the department in respect to filling, and that a usual condition required by the department was that the licensee

should build a retaining wall or bulkhead to hold the filling. The judge excluded each and every one of these licenses and the defendant excepted.

The licenses issued by the department of public works were offered to show a practice of the department under G. L. c. 91, § 21, as to charges made for tidewater displacements and also to show that the department required the construction of a retaining wall or bulkhead as a condition attached to all licenses granted. The respondent had introduced evidence showing the cubic contents of water to be displaced by the filling and the cost of building the retaining wall or bulkhead; and G. L. c. 91, § 21, requiring the department of public works to determine the amount of compensation to be paid by "the persons who cause such displacement" of tidewater was before the jury. The judge excluded all evidence as to charges heretofore made by the department of public works for tidewater displacements except as shown in the licenses granted the petitioner in 1911 to fill flats in Palmer Cove outside the area involved in the present case. The license granted the petitioner in 1911 was apparently admitted in evidence without objection by the respondent. The exceptions taken to the rejection of the evidence as to the practice of the department of public works since 1921 respecting the compensation to be paid by persons licensed to cause a displacement of tidewater must be sustained. Such practice of the department, unvarying in its demand that compensation be made since 1921, raised a reasonable presumption that a demand of compensation for such a license was the rule of the department and that the granting of a license without compensation was a rare exception. The fact that compensation would probably be required as a condition to the issuance of a license to displace tidewater by filling flats obviously had a material bearing upon the value of the unfilled flats for mercantile purposes and other uses to which filled flats might be adapted.

The respondent in four requests asked, in substance, (1) that the jury be instructed that St. 1928, c. 364, which gave the respondent the right to take the flats in question,

"excluded the petitioner from securing a license from the department of public works to fill his flats and the jury should exclude from their estimate of damages any consideration of value which might accrue to the petitioner by securing a license from the State or a permit from the Federal government to fill his flats"; (2) that St. 1928 "terminates the chance and probability of the petitioner ever obtaining a license from the State, or a permit from the Federal government to fill his flats and may, therefore, disregard any value which would accrue to the petitioner by filling the flats"; (3) that "the petitioner never had a right to fill his flats without a license from the Commonwealth and a permit from the Federal authorities. He could not demand such a license or permit as a matter of right. The Commonwealth and the Federal authorities could give or withhold such license and permit in their discretion. St. 1928, c. 364, was passed to enable the city of Salem to abate a nuisance which had been caused by the promiscuous and unauthorized filling of flats in Palmer Cove. This act was accepted by the city of Salem and the city thereby acquired the right to take and fill the petitioner's flats for the suppressing of a nuisance. This act was the exercise in part of the police power of the Commonwealth. In estimating the petitioner's damages the jury should consider that the possibility and probability of the petitioner ever obtaining a license from the Commonwealth or a permit from the Federal government to fill his flats had been extinguished by the Legislature before his flats were taken by the city and therefore any advantage which might have accrued to the petitioner by reason of a license or permit to fill flats should not be taken into account by the jury as an element in estimating the petitioner's damages"; and (4) that the "petitioner's damages as to flats taken is the fair market value of the flats as of the date of taking disregarding all enhanced value which might accrue to the petitioner by filling his flats, because the possibility and probability of the petitioner ever securing a license to fill his flats had been extinguished by the action of the Legislature (in the exercise of the police power of the State) in giving to the city of Salem permission to fill the flats."

These requests were properly refused. Until the respondent seized the petitioner's land by eminent domain the petitioner was the owner of his upland and flats. The acceptance of the act was not equivalent to a taking in fee by eminent domain. The statute did not purport to prevent the petitioner from securing a license and permit to fill his flats at any time before the respondent actually seized them by eminent domain. In this respect the judge rightly instructed the jury that "In estimating the value of these flats the jury should consider the fair market value of the flats at the time they were taken over by the respondent on August 9, 1928"; that they "should consider the use to which they could be put by the petitioner"; that he is "entitled to recover the fair market value of the flats as of August 9, 1928; it is for you to say . . . what if any improvements these have, that is with regard to the tidewater displacement, and the cost thereof; you heard the statutes read by me; it is for you to say . . . what help the testimony as to the cost of building a retaining wall and the possibility or probability of assessment of tidewater displacement by either or both the State and the Federal government has upon the fair market value of the flats of the petitioner on the date of the taking." The rule thus stated is the general rule and was not inapplicable because of the special facts of the taking. *Lawrence* v. *Boston,* 119 Mass. 126. *Smith* v. *Commonwealth,* 210 Mass. 259.

*Exceptions sustained.*