FRANK PERRY, JR., administrator, *vs.* RICHARD STANFIELD.

Essex.    November 5, 1931. — March 29, 1932.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Jurisdiction. Admiralty. Negligence*, In navigation, Contributory, Imputed, Violation of statute. *Proximate Cause.*

Under 36 U. S. Sts. at Large, 1091, 1161, the courts of this Commonwealth have jurisdiction of an action of tort by an administrator against the master of a fishing schooner for causing through negligence conscious suffering and the death of the plaintiff's intestate, who was drowned as a result of a collision between the schooner and a power boat in the navigable waters at the mouth of Gloucester Harbor.

At the trial of the action above described, it appeared that the power boat had left the harbor with barrels of fish waste to be dumped in violation of 30 U. S. Sts. at Large, 1152, 1153; that the plaintiff's intestate was one of a crew of three thereon; that just before the collision the clutch of the engine of the power boat had been pulled out and the boat had been allowed "to idle" while the waste was being dumped; that there was no lookout kept on the boat; that there was a clear view of the harbor from the boat; that, although the weather was clear, the schooner, coming from the harbor, was not observed on the power boat until she was one hundred feet away, when the member of the crew in charge of the power boat speeded up his engine to go ahead and "threw his wheel hard aport to go to starboard and straighten out his boat in the same direction the schooner was going" and to cross the schooner's bow, and the starboard side of the schooner struck the port side of the power boat. There was evidence that the plaintiff's intestate surrendered all care concerning lookout and observation of approaching vessels and relinquished all control of his safety in that particular to the person in charge of the power boat. It was admitted that there was evidence of negligence on the part of the defendant's servants. There was a verdict for the plaintiff. The defendant alleged exceptions. *Held*, that

(1) An instruction to the jury, that the dumping of refuse into navigable waters of the United States in violation of 30 U. S. Sts. at Large, 1152, 1153 was not a contributing cause of the collision so as to bar recovery by the plaintiff, disclosed no error;

(2) There was error in an instruction to the jury to the effect that there was no evidence of contributory negligence or fault on the part of the plaintiff's intestate or of any person for whose negligence he was responsible;

(3) There was evidence of negligence on the part of the person in charge of the power boat; and it was error not to instruct the jury that, if it were found that the plaintiff's intestate had surrendered all care concerning lookout and observation to that person, such person's negligence, if found by the jury, barred recovery by the plaintiff.

TORT against the master of the fishing schooner "Shamrock" for causing conscious suffering and the death of Joseph Perry, the plaintiff's intestate, in a collision between the schooner and power boat C–664 of the Gorton-Pew Fisheries Company at the mouth of Gloucester Harbor on June 6, 1928. Writ dated March 29, 1930.

In the Superior Court, the action was tried before *Lummus*, J. Material evidence is stated in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered in his favor. The motion was denied.

The defendant presented the following requests for rulings: "1. The plaintiff cannot recover in this action if his in-

testate's own conduct or want of ordinary prudence contributed in the slightest degree to cause his injuries or death.

"2. If the intestate surrendered all care for his own safety to Carr, or relied wholly upon Carr in the operation and control of the motor boat, and any negligence of Carr contributed to cause the accident, then the plaintiff cannot recover in this action.

"3. Upon all the evidence the intestate surrendered all care for his own safety to Carr, and relied wholly upon Carr in the operation and control of the motor boat, and is bound by any negligent conduct of Carr which contributed to cause the accident.

"4. If Carr in the operation of the motor boat violated the law in any respect and such violation contributed in any way to cause the accident, the plaintiff cannot recover."

"6. Unless the accident occurred and was caused solely by the negligence of the defendant or someone for whose conduct the defendant was legally responsible, the plaintiff cannot recover.

"7. Even if it be found that the defendant, or someone for whose conduct the defendant was legally responsible, was negligent, which in part contributed to the accident, the plaintiff cannot recover if the conduct of the intestate or anyone to whom he surrendered his care contributed in any degree to cause the accident.

"8. The intestate or person to whom he surrendered his care was bound to exercise reasonable care to avoid a collision which might cause injury to himself or to the person or property of others.

"9. The intestate would not be exercising the care of a reasonable person if he was acting on the assumption that there was no danger of his motor boat being struck or relied wholly upon those in charge of the Schooner 'Shamrock' to avoid a collision.

"10. The statutory provision that the plaintiff's intestate is presumed to have been in the exercise of due care is not evidence of such due care, and is not conclusive, and may be rebutted by evidence tending to show that he was not in the exercise of due care."

"22. Upon all the evidence the collision occurred upon navigable waters of the United States and under the law jurisdiction over actions of tort arising from events occurring on such navigable waters is vested exclusively in the Federal courts, saving to plaintiffs only such other rights of action as existed at common law; and as under the common law no right of action for death existed, the plaintiff cannot recover under the count for the death of his intestate.

"23. Under the Federal law it was unlawful to throw, discharge or deposit, or cause, suffer, or procure to be thrown, discharged, or deposited either from or out of any ship, barge or floating craft of any kind, any refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state, into the navigable waters where this collision occurred, and because upon all the evidence the plaintiff's intestate was engaged in dumping, or causing or suffering to be thrown or discharged, fish refuse into the navigable waters where this collision occurred, he was a trespasser or outlaw thereon and engaged in an unlawful act which precludes recovery by the plaintiff in this action."

The requests were denied.

The entire charge of the judge to the jury "on all the questions raised by" the bill of exceptions, "including the defendant's requests for rulings and instructions and the defendant's exceptions to the charge and instructions to the jury" was as follows:

"There is no question in this case involving contributory negligence or contributory fault on the part of Joseph Perry. If Joseph Perry was employed on a boat that was engaged in the dumping of refuse into the harbor in violation of the United States Code Title 33, § 407, I instruct you that the illegal dumping into the harbor was not a contributing cause of the collision so as to deprive the plaintiff of any right that otherwise the plaintiff might have here. And I instruct you further that there is no evidence in this case of any contributory negligence or fault on the part of Joseph Perry or of any person for whose negligence or fault Joseph

Perry or the plaintiff in this case, is responsible. The result is that the sole question left in this case for your consideration as to liability is whether there was negligence on the part of the mate or any of the crew of the schooner which resulted in or which caused the death of Joseph Perry."

There was a verdict for the plaintiff in the sum of $6,023.13; and the defendant alleged exceptions.

*E. J. Garity*, for the defendant.

*A. J. Santry*, (*F. Fish* with him,) for the plaintiff.

RUGG, C.J. Damages are sought in this action of tort for the conscious suffering and death of the plaintiff's intestate alleged to have been caused by the negligence of the servants of the defendant. The intestate was working on a power boat which was in collision with a fishing schooner. It is conceded that there was evidence to support a finding that the collision was caused by the negligence of the servants of the defendant acting within the scope of their employment in charge of the schooner. It is not contended that it could not rightly have been found that the suffering and death of the intestate resulted from that collision. The collision occurred in the late forenoon of a June morning in navigable waters at the mouth of Gloucester Harbor. Although the sun was not visible, the weather was clear. The intestate was one of three on board the power boat, all employees of its owner. The power boat was about thirty feet long and eight feet wide. It was loaded with barrels of fish waste. The object of its voyage and the duty of its crew were to dump into the water the contents of the barrels. There was evidence tending to show these facts: One Carr, a fellow employee of the intestate, had sole charge of the operation and navigation of the power boat. After leaving the wharf, the power boat proceeded down the harbor to a point outside the breakwater, where the navigable channel was about half a mile wide and where Carr pulled out the clutch of the engine and "allowed it to idle." From this point those on board could see the harbor plainly. The three men started dumping the contents of the barrels into the water and had emptied all but three or four barrels. Carr

and the intestate were at the forward end and the other man at the stern. Carr, happening to turn around, saw the schooner bearing down upon them, under power, from the harbor and about one hundred feet away. The three men cried out loudly toward the schooner, which did not change her course or speed. Carr ran aft, speeded up his engine to go ahead and "threw his wheel hard aport to go to starboard and straighten out his boat in the same direction the schooner was going." He testified "I started to cross the schooner's bow in that position. I was taking the chance of the schooner going right over my bow." The starboard side of the schooner collided with the port side of the power boat, which turned over and filled with water. The intestate was drowned.

1. The courts of this Commonwealth have jurisdiction of the cause of action set forth in the plaintiff's declaration. It was agreed by the parties that the collision occurred not on the high seas but on the inland navigable waters of the United States as defined by the United States Code. It is not contended that the cause of action did not occur within the territorial limits of the Commonwealth. G. L. c. 1, § 3. *Manchester* v. *Massachusetts*, 139 U. S. 240. Although the cause of action falls within the admiralty jurisdiction of the United States, it is cognizable in the courts of this Commonwealth by virtue of the provisions of the Judicial Code. Act of March 3, 1911, c. 231, § 24, Third, and § 256, Third; 36 U. S. Sts. at Large, 1091, 1161. It there is provided that exclusive jurisdiction is vested in the courts of the United States of all "civil causes of admiralty and maritime jurisdiction; saving to suitors, in all cases, the right of a common-law remedy, where the common law is competent to give it." The count in the plaintiff's declaration for conscious suffering comes within this saving clause. *Proctor* v. *Dillon*, 235 Mass. 538, 541–552, and Federal decisions there reviewed. The count for death, although founded not on the common law but on a statute amending and enlarging the common law, likewise falls within the saving clause and is within the jurisdiction of the courts of this Commonwealth. That

is settled by several authoritative decisions. *Steamboat Co.* v. *Chase*, 16 Wall. 522. *Sherlock* v. *Alling*, 93 U. S. 99. *Knapp, Stout & Co.* v. *McCaffrey*, 177 U. S. 638, 644. *The Hamilton*, 207 U. S. 398, 404. *Western Fuel Co.* v. *Garcia*, 257 U. S. 233. *Red Cross Line* v. *Atlantic Fruit Co.* 264 U. S. 109, 125. *Panama Railroad* v. *Vasquez*, 271 U. S. 557. *Messel* v. *Foundation Co.* 274 U. S. 427, 434. *Langnes* v. *Green*, 282 U. S. 531.

This point was raised by a request for ruling presented to the trial judge. Since it touches the jurisdiction of the court to entertain the case, it must be determined, although not argued in the defendant's brief. *Eaton* v. *Eaton*, 233 Mass. 351, 364. *Commonwealth* v. *Dyer*, 243 Mass. 472, 508.

2. There were put in evidence (according to the record) §§ 407, 411 of Title 33, U. S. Code Annotated (Act of March 3, 1899, c. 425, §§ 13, 16; 30 U. S. Sts. at Large, 1152, 1153), whereby is prohibited under severe penalty the dumping of refuse into any navigable water of the United States. Therefore, the voyage of the power boat and the work of its crew, including the intestate, were for the accomplishment of an illegal act in violation of a criminal law. Their presence at the time and place of the collision was in direct promotion of that illegal purpose. The sections of the statutes of the United States invoked by the defendant do not prohibit the operation in navigable waters of a boat engaged in the unlawful purpose. They simply forbid the discharge of refuse and impose a penalty for violation of that prohibition. The terms of those sections are different in form and substance from St. 1903, c. 473, § 3 (now G. L. c. 90, § 9, as most recently amended by St. 1931, c. 95), whereby the operation of an unregistered motor vehicle upon any way is prohibited under penalty which was interpreted in *Dudley* v. *Northampton Street Railway*, 202 Mass. 443, 447, 448, to make such unregistered motor vehicles outlaws upon the ways. The principle illustrated by that decision and the many following it, *Balian* v. *Ogassin*, 277 Mass. 525, 532–533, is not applicable to the case at bar. The language of the Federal

statute conveys no indication of intent to protect others operating in navigable waters from collision with craft being used for dumping the prohibited material into the water. Its plain purpose is to protect navigable waters from pollution and shoaling through the prohibited conduct. Compare *Joly* v. *Salem,* 276 Mass. 297. The principles of law applicable to a case like the present were exhaustively considered in *Bourne* v. *Whitman,* 209 Mass. 155, where the court, at page 166, 167, speaking through Chief Justice Knowlton, said: "It is universally recognized that the violation of a criminal statute is evidence of negligence on the part of the violator, as to all consequences that the statute was intended to prevent. . . . it is not even evidence of negligence, except in reference to matters to which the statute relates." The rule there amplified with affluent reference to decided cases is in substance that a plaintiff engaged in a criminal act at the time of suffering injury through the negligence of another is not by that fact alone precluded from recovery of damages. He is so precluded provided the element of criminality directly contributes to his injury. He is not so precluded provided the element of criminality does not directly contribute to his injury. The law on its civil side will not aid a violator of the criminal law in seeking relief from the consequences of his transgression; but it will not deny relief if the illegal factor in the conduct of a plaintiff has no causal connection with the injury for which he asks compensation. The distinction is between an illegal act which is a mere condition and an illegal act which is a contributing cause. *Newcomb* v. *Boston Protective Department,* 146 Mass. 596. *Berdos* v. *Tremont & Suffolk Mills,* 209 Mass. 489, 493, 499. *Jones* v. *New York, New Haven & Hartford Railroad,* 275 Mass. 139. *St. Louis, Iron Mountain & Southern Railway* v. *McWhirter,* 229 U. S. 265, 279–282.

We are of opinion that it could not rightly be found that the illegal element in the conduct of the intestate, namely, participation in the forbidden dumping of refuse into the water, was a contributing cause to his injuries. The col-

lision would have happened just the same if the power boat had been "allowed . . . to idle" for pleasure, for fishing, for repairing the motor, or for other legal acts. The case at bar falls within the class illustrated by *Farrell* v. *B. F. Sturtevant Co.* 194 Mass. 431; *Davis* v. *John L. Whiting & Son Co.* 201 Mass. 91, 96; *Smith* v. *Locke Coal Co.* 265 Mass. 524, 526; *Falk* v. *Finkelman,* 268 Mass. 524; *Milbury* v. *Turner Center System,* 274 Mass. 358. It is distinguishable from cases where the criminal act was the efficient cause of the injury and not a mere condition. *Boyd* v. *Ellison,* 248 Mass. 250. *Widronak* v. *Lord,* 269 Mass. 238. *Pudlo* v. *Dubiel,* 273 Mass. 172. *Cook* v. *Crowell,* 273 Mass. 356. *Tazzini* v. *Boston & Maine Railroad,* 277 Mass. 108. *Richards* v. *Pass,* 277 Mass. 372. There was no error in the instruction to the jury to the effect that the illegal dumping of refuse into the harbor was not a contributing cause of the collision so as to bar the plaintiff from recovery.

3. There was error in the instruction to the effect that there was no evidence of contributory negligence or fault on the part of the intestate or of any person for whose negligence he was responsible. There were introduced in evidence (according to the record) § 221 of Title 33, United States Code Annotated (Act of June 7, 1897, c. 4, § 1; 30 U. S. Sts. at Large, 102), to the effect that nothing "in these rules shall exonerate any vessel, or the owner or master or crew thereof, from the consequences of any neglect to . . . keep a proper lookout, or of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case"; and § 203, Rule 8, to the effect that when one vessel shall attempt to pass another the "vessel ahead shall in no case attempt to cross the bow or crowd upon the course of the passing vessel." (Act of June 7, 1897, c. 4, § 1; 30 U. S. Sts. at Large, 101.) It was agreed by the parties that both the power boat and the schooner came within these provisions. It is plain that the power boat drifting at the mouth of the harbor of a considerable port was required to keep a lookout. It cannot be said to be a "proper lookout" within the requirement of the statute in the

circumstances here disclosed, for no one to be charged with that duty or to exercise that function. *The Noe G.* 148 C. C. A. 613. Three men were aboard the power boat as crew. From it the visibility was clear "right up into the harbor" from which the schooner came. If any one had been looking, she could have been seen from the power boat so that all danger could have been avoided by getting under way and out of her course, or by giving alarm by whistles or otherwise. There was no sudden exigency about the appearance of the schooner and the danger of collision. It all resulted from failure on the part of the crew of the power boat to keep a lookout. Some duty rested upon the intestate in this respect. Although he was on a power boat in navigable waters, he still was bound to exercise the degree of care for his own safety required by the circumstances. The precise inquiry is whether the intestate ought to have been on the lookout for approaching vessels, ought to have seen the schooner, and ought to have warned Carr, the one in charge of the power boat. It could hardly have been ruled as matter of law on all the evidence that the intestate was in the exercise of due care, or that the burden of proving contributory negligence of the intestate resting on the defendant had not been sustained. G. L. c. 231, § 85. Commonly, the question of due care or contributory negligence of the injured person presents a question of fact. *Donoghue* v. *Holyoke Street Railway,* 246 Mass. 485. *O'Connor* v. *Hickey,* 268 Mass. 454. *Caron* v. *Lynn Sand & Stone Co.* 270 Mass. 340. *Gallup* v. *Lazott,* 271 Mass. 406.

It might have been found on all the evidence that the intestate surrendered all care concerning lookout and observation of approaching vessels and relinquished all control of his safety in that particular to Carr, in charge of the power boat. If that be found to be so, then the plaintiff would be required to show due care on the part of Carr, and his negligence, if any, is to be imputed to the intestate. *Yarnold* v. *Bowers,* 186 Mass. 396. *Shultz* v. *Old Colony Street Railway,* 193 Mass. 309. For reasons already stated there was ample evidence of negligence of Carr. It was

his duty as the one in command of the power boat to keep the lookout so as to avoid collision with other craft. It might possibly have been found that, after the danger of collision was discovered, he did not act with the requisite care in attempting to avoid it. Whether it be found that the intestate was bound to exercise care in his own right, or abandoned that subject entirely to Carr, a question of fact was presented which ought to have been submitted to the jury. *Bullard* v. *Boston Elevated Railway,* 226 Mass. 262. *Harter* v. *Boston Elevated Railway,* 259 Mass. 433. *Pendleton* v. *Boston Elevated Railway,* 266 Mass. 214. See *Thorp* v. *Boston Elevated Railway,* 259 Mass. 415.

*Exceptions sustained.*