RICHARD M. YARNOLD, administrator, *vs.* GEORGE BOWERS & another.

Middlesex.    March 1, 1904. — September 8, 1904.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Negligence,* Contributory.

If a person in a rowboat permits another person to do all the rowing and have charge of the boat, he cannot recover from the proprietor of a steamboat for an injury caused by a collision with the steamboat to which the negligence of the rower contributes, especially where there is no negligence on the part of those in charge of the steamboat.

MORTON, J. The plaintiff's intestate, his minor son, was drowned June 30, 1899, in a collision between a small boat in which he was, and a steamboat owned and run by the defendants

on Tyng's Pond in Tyngsboro in this State, and this is an action to recover damages for the injuries sustained by the plaintiff's intestate in his lifetime in consequence of the alleged negligence of the defendants.   There was a verdict for the plaintiff and the case is here on exceptions by the defendants to the admission and exclusion of evidence and to the refusal of the judge to rule as requested that the plaintiff was not entitled to recover.

We think that the ruling requested should have been given, and that the exceptions must be sustained.   The defendants had a summer hotel on the southerly side of the pond at a place called Willow Dale and a small wharf for their steamboat.   About half a mile in a northeasterly direction on the easterly shore of the pond was another small wharf also belonging to the defendants and used by them in their business, called Lakeview. During the summer season the steamboat plied between these points making two or three trips an hour for the conveyance of passengers.   Tyng's Pond is about a mile long and three quarters of a mile wide in its widest part.   The testimony showed that the steamboat always followed the same course in going back and forth between the two wharves, or landings.   About nine o'clock in the evening the plaintiff's intestate and a companion by the name of Thorn and two young ladies started in a small rowboat from Willow Dale to go to Lakeview.   The night was dark.   There was no moon though some stars.   Thorn did all the rowing and had charge of the boat with the consent of the plaintiff's intestate.   They were cautioned before they started to look for the steamboat.   Thorn was familiar with the course of the steamer and knew that she was then at Lakeview, and that her next trip would be from Lakeview to Willow Dale, and that on the route that they took to Lakeview they would meet the steamer and cross her course somewhere.   They had been out only a few minutes when they heard the whistle of the steamboat blow, and heard the steamboat, and one of the young ladies told them to look out for the steamboat.   The steamboat was then about one hundred and fifty feet away.   Thorn thereupon changed his direction so as to row towards the shore and directly across the steamboat's course, and continued to row in that direction until the collision occurred.   At the time of the collision the plaintiff's intestate was standing up in the boat, and the

shock caused him to fall overboard. As soon as those in charge of the steamboat saw the small boat they shouted a warning to those in it, and changed the course of the steamboat with the result that the steamboat struck the small boat only a foot from the bow, and did not upset it or cause it to ship any water, only slewed it round as Thorn testified, and the only one injured was the plaintiff's intestate. Though it is stated in the exceptions that "there was a conflict of evidence as to the number and kind of lights on the steamer," it is plain that there were lights on the steamer, and the uncontradicted evidence tended to show that she could be seen and heard at a considerable distance, — all over the pond some of the witnesses testified. The steamer was following her usual course which was known to Thorn, and was going, for aught that appears, at her usual speed. There is nothing to show that any precautions were neglected by those in charge of the steamer which if followed would have tended to avoid the accident. The fact that the boat was not discovered, by those in charge of the steamer, till too late to avoid a collision, does not seem to us under the circumstances any evidence of negligence on their part. The night was dark, and the boat was small, and no light was shown or noise made by those in the boat to warn those in charge of the steamer of its presence. As soon as the boat was discovered, those in charge of the steamer appear to have done all that could be done to avoid a collision, and to have been so far successful that the boat was not upset, and did not ship any water, and no one except the plaintiff's intestate was injured, and he would in all probability have escaped if he had been sitting down instead of standing up. We see no evidence of negligence on the part of those in charge of the steamer, and it seems to us plain that Thorn was not in the exercise of due care. The plaintiff contends that his intestate is not to be affected by Thorn's negligence. But the case of *Allyn* v. *Boston & Albany Railroad,* 105 Mass. 77, is decisive on that point. As already observed, the uncontradicted evidence showed that Thorn did all the rowing and had charge of the boat with the consent of the plaintiff's intestate. Under such circumstances the plaintiff was bound to show that Thorn was in the exercise of due care as a condition of recovery. There is nothing in *Murray* v. *Boston Ice Co.* 180 Mass. 165, or *Ran-*

*dolph* v. *O'Riordon,* 155 Mass. 331, which affects *Allyn* v. *Boston & Albany Railroad* as applied to the circumstances of this case. We see no error in the admission or exclusion of testimony.

*Exceptions sustained.*

*W. H. Bent,* for the defendants.
*D. J. Donahue,* for the plaintiff.