JAMES J. BURNS, administrator, *vs.* F. KNIGHT AND SON CORPORATION.

Suffolk. December 12, 1912. — January 29, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence,* Of child, In use of highway. *Practice, Civil,* Judge's charge. *Evidence,* Presumptions and burden of proof.

In an action for causing the death of a boy seven years and five months of age, where the jury were instructed that the boy was not in the exercise of due care in placing himself where he incurred the injury that caused his death "if he appreciated the danger that there was in putting himself in the place where he was," it was *held,* that the instruction certainly was sufficiently favorable to the defendant, and it was *said,* that one of the reasons that a child is not to be expected to exercise the same degree of care as an adult is his lack of appreciation of the risks he may be running.

It is not necessarily negligent for an ordinarily bright boy seven years and five months of age, who sees men with horses moving a heavy iron girder along the ground, to stand within the natural forward course of a roller on which the girder is laid, and at the trial of an action for causing the death of the boy by allowing the roller to run over him, it is right for the presiding judge to refuse to make a ruling that if the boy so stood he was not in the exercise of due care, especially where it appears that the boy was in the centre of the sidewalk of a public street and that the roller was lying in the gutter below the level of the

sidewalk before it suddenly was started into motion, and where it is not a conceded fact that the boy had seen the roller or was at fault in not having seen it.

In an action against a corporation engaged in a general teaming business, for causing the death of the plaintiff's intestate through the negligence of a driver of a dray of the defendant, where it appears that the accident happened after half past six o'clock in the evening, it is proper for the judge in his charge to suggest to the jury that they may consider whether it was the time of night when the driver was in a hurry to finish his work and to get home and feed his horses, although there has been no direct evidence that the driver was in a hurry.

TORT, by the administrator of the estate of Thomas Burns against a corporation engaged in a general teaming business, for causing the death of the plaintiff's intestate, a boy seven years, five months and ten days old, on August 19, 1910, at or near the corner of Webber Street and Douglas Avenue in that part of Boston called Roxbury. Writ dated September 7, 1910.

In the Superior Court the case was tried before *Dubuque,* J. On the day of the accident the defendant was employed by an iron company, having a place of business on Webber Street, to move some heavy iron beams from Jamaica Plain to such place of business. Adjacent to the iron company's yard was an open lot over which was a roadway called Douglas Avenue running from Webber Street, which was a public way, to another street parallel to Webber Street. The defendant's driver, one Kellough, brought a load consisting of six or seven of the beams, on a four horse dray, to the iron company's yard. As he turned in from Webber Street upon Douglas Avenue his rear wheels sank into the mud and he was unable to proceed. He thereupon threw off three or four of the beams and proceeded with the rest of the load across the open lot over which Douglas Avenue ran to the yard of the iron company, which had an entrance on this open lot. He then unhitched the two "lead horses" and proceeded to draw the remaining beams over the surface of the ground on rollers by means of a chain attached to the rear end of the beams and passing along them to where the chain was hitched to the horses at the front end. These beams as they lay on the ground extended along Douglas Avenue, across the sidewalk on Webber Street to about the middle of that street. Two or three of the beams had been drawn into the iron company's yard without incident. While the third or fourth was be-

ing drawn across the sidewalk of Webber Street in this manner, the plaintiff's intestate was caught under the rear roller, while on the sidewalk, and received injuries from which he died within a few minutes.

The plaintiff, who was the father of his intestate, testified that he lived at 29 Webber Street, two houses from the junction of that street and Douglas Avenue; that on the day of the accident the family had supper at about a quarter past six o'clock, and that the intestate and the witness's little girl, about five years old, went out together after supper at about half past six; that the boy told him where he was going; and that almost immediately there was a commotion in the street and he went out and found that his boy had been hurt and sent to the hospital. He further testified that the intestate was a bright and intelligent little boy.

One Coughlin, a witness called by the plaintiff, testified, among other things, as follows: " I saw the driver start his horses on the girder which hurt the Burns boy. I saw the Burns boy and the girl on the sidewalk on Webber Street, that is on the sidewalk on the Douglas Avenue side of Webber Street. When I first saw them they were coming from their house and I should judge they were about to go down the street toward Harrison Avenue. They were going in the direction of Harrison Avenue. These columns having the sidewalk blockaded, it was impossible for them to cross. Meanwhile the horses had started without any signal whatsoever, and caught this young chap's foot and knocked him. At the time the boy was knocked down they were right in the centre of the sidewalk. They were walking along and just at the time they came so near to the iron the horses had started and caught his foot and knocked him and rolled up on him. It was the roller that hit his foot; it knocked him and the roller went right up on his body. It seemed that the roller was in the gutter, and the end of the column had cut the street and it dug the street until it got on to this roller and then it rolled. . . . When it struck the roller, the roller started rolling and rolled until it caught the boy. It stopped then. Mr. Reiser, another man who was there, hollered to the teamster. Until Mr. Reiser hollered the horses kept on going, and then the driver stopped and I helped release the boy. When I went over to help release the boy, the roller was about up to his neck and

shoulders. At the time of the accident the driver was at the front end of the column with the reins."

Reiser, referred to in the foregoing testimony, also was called as a witness by the plaintiff and gave a similar description of the accident. He testified that, when the driver stopped his horses and the roller stopped rolling, the boy who had been run over was about in the centre of the sidewalk, and that the roller was about five feet long and six or seven inches in diameter.

At the close of the evidence the defendant asked the judge to make the following rulings:

" 1. On all the evidence the plaintiff is not entitled to recover."

" 3. On all the evidence the plaintiff's intestate was not in the exercise of due care, and therefore the plaintiff cannot recover."

" 5. It is not due care on the part of an ordinary bright child of seven years and five months of age, who sees men with horses moving a heavy iron girder along the ground, to stand within the natural forward course of a roller above which the girder is laid.

" 6. It is not due care on the part of an ordinarily bright child of seven years and five months of age, who sees men with horses moving a heavy iron girder along the ground, to stand within the natural forward course of a roller above which the girder is laid, even though as a matter of fact the girder may not be resting on the roller and the roller may at the time be stationary.

" 7. It is not due care on the part of an ordinarily bright child of seven years and five months of age to stand within a foot or a foot and a half of a heavy iron girder that is being drawn over unprepared ground by a pair of horses hitched to a chain attached to the girder."

The judge refused to make any of these rulings. He made the fourth ruling requested by the defendant with a qualification. That ruling was as follows, the qualification added by the judge being enclosed in brackets:

" 4. If the plaintiff's intestate knew, or if an ordinarily prudent child of his age ought to have known, that the girder was being drawn over rollers by horses attached to the front end, he was not in the exercise of due care if he placed himself in front of one of the rollers, [if he appreciated the danger that there was in putting himself in the place where he was]."

The defendant, besides excepting to the refusals of rulings

stated above, excepted to certain portions of the judge's charge, stating his exception in part as follows: " I desire to except to that portion of your honor's charge in which you suggested to the jury the question of whether it was the time of night when Kellough was in a hurry to get home and feed his horses; and again, where you said was he anxious and in a hurry to get the girders into the yard, there being as I recollect it no testimony upon which such a suggestion can properly be made by the court."

The jury returned a verdict for the plaintiff in the sum of $7,500; and the defendant alleged exceptions.

*E. K. Arnold,* for the defendant.

*J. W. McAnarney,* (*T. F. McAnarney* with him,) for the plaintiff.

SHELDON, J. The judge at the trial acted rightly in refusing the defendant's first and third requests and in submitting the case to the jury.

There was evidence that the accident was due to negligence of the defendant's driver Kellough. Indeed this hardly has been contested.

It could be found also that the plaintiff's intestate was in the exercise of as high a degree of care as properly could be expected from one of his age. According to the testimony of Coughlin the intestate was walking along the sidewalk until his progress was stopped by the girder. Then Kellough suddenly started the horses to pull the girder; the roller was drawn across the sidewalk, caught the intestate's foot, knocked him down and rolled upon his body. He had no warning of the starting of the horses or of the danger of his foot being caught. No caution was given to him by Kellough or any one else. He was not bound to anticipate that the girder would be started or that there would be a protruding roller likely to hit him or to catch his foot. It could be found that he had not seen the other girders drawn away, and that there was absolutely nothing to indicate the presence of any impending danger. Under such circumstances it would have been wrong to rule that his conduct was negligent.

The giving of the fourth request with the qualification added to it by the judge certainly was sufficiently favorable to the defendant. One of the reasons why a child is not held to the same degree of care as if he were an adult is lack of appreciation of the risks that he may be running.

The other requests were rightly refused. The assumptions made in them, if found by the jury to be correct, would have a bearing upon the question of the boy's due care, but would not be conclusive against him. It was not a conceded fact, as was assumed in the fifth and sixth requests, that he had seen or that he was at fault for not having seen the roller which struck him, lying as it was in the gutter below the level of the sidewalk on which he stood. And there would be serious difficulty in applying the rule of the seventh request even to an adult.

The exception to what the judge said to the jury, about the lateness of the hour and as to whether Kellough was in a hurry to feed his horses and get home, cannot be sustained. It was proper to call the attention of the jury to the subject. The case does not resemble *Plummer* v. *Boston Elevated Railway*, 198 Mass. 499, 516. It does not need direct evidence to enable a jury to say that this may be so at a time between half-past six and seven o'clock in the evening, and the fact might have a bearing upon Kellough's conduct and the inferences to be drawn from it.

None of the other exceptions requires discussion.

*Exceptions overruled.*