PITMAN AND BROWN COMPANY *vs.* EASTERN MASSA-
CHUSETTS STREET RAILWAY.

ARTHUR MCGUIRE *vs.* SAME.

Essex.    January 19, 1926. — March 29, 1926.

Present: PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Negligence,* Contributory, In use of highway, Motor vehicle.

At the trial together of two actions of tort against a street railway com-
pany, one by the owner of, and the other by a guest of the driver in the
cab of, a loaded truck into which a street car of the defendant ran on
a misty night after the truck came from an intersecting street upon the
tracks of the defendant, where there was evidence that, while the truck
was going twenty-eight feet, the street car went four hundred and sixty
feet and that the driver of the truck and his guest both looked up the
defendant's track until within the last eight feet of their progress,
when their view was obscured by their load, and saw no car, and that
no gong was sounded on the car, it is proper to refuse to order verdicts
for the defendant, the questions of the due care of the driver in the action
where the burden of proving his due care was on the owner of the truck,
and of contributory negligence of the guest in the action where the
burden of proving contributory negligence was on the street railway
company, both being for the jury.

TWO ACTIONS OF TORT, the first for damages to a motor
truck, and the second for personal injuries, caused by a
collision of a street car of the defendant with the truck, in
the cab of which the plaintiff in the second action was riding
as a guest of the driver. Writs dated, respectively, De-
cember 19, 1921, and March 17, 1922.

In the Superior Court, the actions were tried together
before *Brown,* J. Material evidence is described in the
opinion. At the close of the evidence, the defendant moved
that verdicts be ordered in its favor. The motions were
denied. The jury found for the plaintiff in the first action
in the sum of $600, and for the plaintiff in the second action
in the sum of $400. The defendant alleged exceptions.

*J. J. Ronan,* for the defendant.

*H. E. Jackson,* for the plaintiff Pitman and Brown Company.

*E. S. Underwood,* for the plaintiff McGuire.

SANDERSON, J.    The first action was brought to recover damages for injuries to the truck of the plaintiff, Pitman and Brown Company (hereinafter called the corporation), arising from a collision with a street car of the defendant while the truck was being driven by the corporation's chauffeur at about five o'clock in the afternoon of November 14, 1921, on Chelsea Street in Charlestown near its intersection with Medford Street.    The second action is for personal injuries sustained by the plaintiff McGuire, who was riding in the cab of the truck at the time of the accident.    A verdict was rendered for the plaintiff in each action, and the only questions argued relate to the due care of the plaintiff's chauffeur in one case, and of the individual plaintiff in the other.

Chelsea Street is a main highway running north and south and leading from Boston to Lynn, and is intersected on its westerly side at about right angles by Medford Street. Chelsea Street is about forty-nine feet wide from curb to curb and sixty feet between property lines, and in the middle of the street are located double tracks of the defendant. The truck had come from Medford Street and at the time of the accident was moving across Chelsea Street toward Lynn in a somewhat diagonal direction for the purpose of getting upon the driver's right hand side of Chelsea Street. There was evidence that the collision occurred on the Lynn side of Medford Street.    A heavy mist was falling and the night was dark.    The road surface over which the truck was moving was constructed of cobble stones and was slippery and rough.    A street light was near the corner of Medford and Chelsea streets and there were lights on the front and back of the truck as well as upon the street car.    The truck was a two and a half ton truck, twenty-five feet long, carrying a load of five tons of lumber and glass covered with a white canvas.    The driver and McGuire were in a steel cab painted white with leather sides and isinglass windows which, according to the testimony of the chauffeur, at the time of the accident were in the pockets in the lower half of the doors.

The motorman testified that the cab was closed on the right side.   The windshield in front of the cab was of glass.   The truck stopped on the cross walk for foot passage across Medford Street until a Boston bound car, which had stopped at Medford Street, and an automobile following it had passed. The jury could have found that the car which hit the truck was going as fast as twenty or twenty-five miles per hour and did not lessen its speed before the accident; and that the truck was going as slow as one and one half miles per hour, just barely moving.

There was evidence that the chauffeur at McGuire's request was giving him a ride to Lynn.   McGuire sat on the right of the driver, and, when the truck started from the cross walk, looked to his left toward Lynn and saw nothing coming, then toward Boston and saw the car that had passed which, according to his testimony, was about three hundred feet distant; and he then saw no other car; that the truck travelled from the place where he first looked to the place of collision about twenty-eight feet.   He testified to trusting the chauffeur and putting himself in his charge, but that he was looking to the right for his own safety; that at the corner of Medford Street he could see between the building and the Boston bound car three hundred yards toward Boston; that when the truck started up the outbound track was clear for three hundred yards; that while the truck went from the Medford Street side of the cross walk to the westerly rail of the inbound track, the Boston bound car went three hundred feet and he then stopped looking; that he could not see the car because he was caged in with the chauffeur; that no gong or horn was sounded; that after the electric car went by toward Boston and the truck crossed two rails immediately there was a collision, and he wanted this adopted as his testimony.   He further testified that the truck at the point of collision was headed in a diagonal direction across the track and at the moment of collision he would not have been able to see the electric car from his position in the cab unless he stuck his head out; that he didn't think he could see it at that time on account of the position of the car and the way the truck had got around; that there was nothing to prevent

him from looking until the chauffeur turned more to the left; and that he did not see the car which hit the truck until after the collision.

The chauffeur testified that after the Boston bound car and an automobile had passed he started in first speed and just barely went ahead, and when he got out on Chelsea Street he looked and there was no car in sight coming from Boston; that his speed was three miles per hour; that he could almost stop in his tracks. As he left Medford Street there was nothing within three hundred or four hundred feet that he could see; that he looked four or five times and kept looking until he got too far out; that he saw the Boston bound car ten or fifteen feet on the Boston side of Medford Street; that when the truck got on and practically over the Boston bound car rail, he looked to his right for three hundred feet and saw nothing; there was no car then in sight; that he did not look any more and the crash came; that from the time he last looked until the crash the truck went eight feet on a slant and he didn't know what struck him until he got out of the cab. There was evidence tending to prove that the left side of the fender of the street car struck the right hand front wheel of the truck and that the truck looked afterwards as though it had been "sideswiped."

There was conflicting testimony as to the place where the Boston bound and the Lynn bound cars passed each other, varying from about two car lengths on the Boston side of Medford Street to about three hundred feet from that street. The motorman testified that he was prevented from seeing the truck before it got out so far because of traffic; that a car going towards Boston obscured his vision a short while. If the distance which the truck had to travel from the place where it stopped on Medford Street in a diagonal direction to the place of collision was, as estimated by one witness, twenty-eight feet, and if it was moving at the rate of one and one half miles an hour and the street car at the rate of twenty-five miles per hour, the street car would have travelled about four hundred and sixty feet while the truck was travelling twenty-eight, and while the truck was travelling eight feet

the street car would travel about one hundred and thirty feet.

The plaintiff corporation had the burden of proving that its chauffeur was in the exercise of due care. *Bullard* v. *Boston Elevated Railway*, 226 Mass. 262, 267. But in the case of the individual plaintiff the defendant had the burden of proving contributory negligence. G. L. c. 231, § 85.

When we consider the weather conditions and the extent to which they may have been found to affect the visibility of objects and the estimates of distances and speeds, the nature of the load on the truck which, at some time, as the truck was making the diagonal turn into Chelsea Street, would partially cut off a view behind, the fact that the street car that had passed Medford Street going toward Boston might for a time conceal from view the approaching car or be mistaken for it, together with the evidence of the relative speed of the car and of the truck, we are unable to say that the trial judge erred in leaving to the jury the questions of the due care of the chauffeur and of the individual plaintiff.

The case is governed in principle by *Salisbury* v. *Boston Elevated Railway*, 239 Mass. 430, and comes within the line of cases where it has been held that when a collision occurs between vehicles at intersecting streets the questions of due care and negligence are ordinarily for the jury to decide, *Purtell* v. *Jordan*, 156 Mass. 573, *Farris* v. *Boston Elevated Railway*, 210 Mass. 585; and is to be distinguished from cases like *Pigeon* v. *Massachusetts Northeastern Street Railway*, 230 Mass. 392, where it appeared that there was no rational explanation of the plaintiff's conduct consistent with due care.

*Exceptions overruled.*