ADRIAN E. BESSEY, administrator, *vs.* FRANK SALEMME.

ADRIAN E. BESSEY, administrator, *vs.* SAME.

BERTHA BERRY *vs.* SAME.

Middlesex.    May 6, 1938. — January 31, 1939.

Present: LUMMUS, QUA, DOLAN, & COX, JJ.

*Negligence*, Imputed, Guest, Motor vehicle, In use of way, Contribu-
tory, Due care of child.  *Parent and Child.  Practice, Civil*, Requests,
rulings and instructions.

A finding that the operator of a six ton motor truck was negligent was
warranted by evidence that he drove it down grade at the rate of
forty to forty-five miles an hour at about the center of a twenty-five
foot road toward two approaching vehicles with one of which he
collided as it turned out to its left from behind the other.

Evidence merely that occupants of an automobile did nothing when the
operator, because of the sudden stopping of another automobile
directly in front, turned quickly to the left into the path of a rapidly
approaching truck, thus causing an instant collision, did not require
a ruling that they were guilty of contributory negligence.

A request for an instruction to the jury that the "evidence indicates"
a certain fact, and that, if they "so find" there could be no recovery,
properly was refused as seeking an instruction in violation of G. L.
(Ter. Ed.) c. 231, § 81.

There was no evidence warranting a finding of contributory negligence
of a boy nine years of age injured in a collision of motor vehicles in
one of which he was riding where it appeared merely that he was
"just sitting" on the rear seat with his mother.

A boy nine years of age riding in an automobile operated by his father
when he sustained an injury in a collision with a motor truck caused
by negligence of both operators was old enough to care for himself,
and the father's negligence was not imputable to him so as to bar
his action against the operator of the truck.

A guest in a private vehicle, capable of exercising care for his own safety
and not in a relationship with the driver of agency or participant
in a joint enterprise, if himself not contributorily negligent, either
in surrendering care of himself to the driver or in any other particular,
is not barred from recovery against a third person for injuries due to
concurrent negligence of the driver and the third person.

THREE ACTIONS OF TORT.   Writs in the Superior Court
dated August 25, 1932.

The actions were tried together before *Donahue*, J.   In the first action the defendant asked for the following rulings:

"4. The evidence indicates that the plaintiff's intestate surrendered all care of himself to the driver.   If you so find, then he was negligent and cannot recover.

"5. Plaintiff's intestate, a minor, submitted himself to the care of his father and is bound by his father's unlawful and negligent acts."

In the second action the defendant asked for the following ruling:

"4. The evidence indicates that the plaintiff's intestate surrendered all care of herself to the driver.   If you so find, then she was negligent and cannot recover."

In the third action, the defendant asked for the following ruling:

"4. The evidence indicates that the plaintiff surrendered all care of herself to the driver.   If you so find, then she was negligent and cannot recover."

In his charge, the judge instructed the jury: "Now in the case of a person riding as a guest or passenger in the car operated by a third person . . . the guest or passenger is barred from recovery only in case the driver of his own car is first, his servant, the master is responsible for the acts of his servants, and the servant's negligence is imputed to him; and, secondly, where a person riding in a car has an equal right, a right equal to that of the driver, to control the operation of the car.   He may not be his servant, but the owner of the car has the right to control its operation, of course; and, thirdly, where a person riding in a car has made a voluntary and unrestrained surrender of the care of his person to the driver of the car.

"Now, in this case Mr. Bessey was not the servant of Mrs. Berry, his sister; neither Mrs. Bessey nor Mrs. Berry had the right to control the operation of that car; and thirdly, there is no evidence in the case to warrant a finding that either one voluntarily and without constraint made a complete surrender of all care of their persons or her person to the caution of the driver.   So that these cases, if you get to the question of the negligence of the occupants

of the Bessey car, you will decide their right to recover upon their own due care, not upon the due care of the driver. That is, I instruct you in this case that though you find that Mr. Bessey was negligent in operating the motor vehicle that he was driving, and that his negligence contributed to the accident, even though that happened, these plaintiffs may recover. When I say 'these plaintiffs', in the case of John and Mrs. Bessey I mean the administrator of each. These plaintiffs may recover provided there was no act or omission on the part of either which had any causal relation to the happening of the accident. That is, their right to recover depends upon their own due care . . . . The right of John and right of Mrs. Bessey and right of Mrs. Berry depends upon the due care of each . . . but in John's case there is no evidence one way or the other of his due care, and, the burden being upon the defendant, I rule as a matter of law the defendant has not sustained the burden of proof that John Bessey was guilty of contributory negligence. John Bessey's administrator has a right to recover here by proving that the defendant was negligent and that his negligence contributed to the death of John."

There were verdicts for the plaintiffs respectively as follows: for the plaintiff in each of the first two actions in the sum of $1 for causing conscious suffering and of $3,000 for causing death; and for the plaintiff in the third action in the sum of $3,500.

The defendant alleged exceptions, among other things, to the refusal to give the rulings above set out; to the "charge there is no evidence that either of the passengers had surrendered their care to that of the driver"; that "although Bessey was negligent the passengers may recover"; "that there was no evidence of John Bessey's negligence and he could recover if the defendant was negligent."

*J. F. Cavanagh,* for the defendant.

*E. Martin,* for the plaintiffs.

Cox, J.   These are three actions of tort, which were tried together, arising out of a collision of an automobile operated by Prince M. Bessey, hereinafter referred to as Bessey, with a motor truck operated by the defendant.

The plaintiff administrator's intestates, John A. Bessey and Persis M. Bessey, son and wife respectively of Bessey, and the plaintiff Berry were passengers in the Bessey automobile. There was a verdict for the plaintiff in each case.

The jury could have found that the Bessey automobile was travelling westerly and up-grade at a speed of from twenty to twenty-five miles an hour on a road, the travelled part of which was twenty-five feet wide, when an automobile that was preceding it at a distance of from twenty to thirty feet, stopped suddenly. Bessey turned to his left to avoid a collision. The truck, operated by the defendant and weighing close to six tons, was approaching on the down-grade. At a point distant five hundred to seven hundred feet from where the collision occurred, the truck had passed an automobile travelling in the same direction, and continued on at a speed of from forty to forty-five miles an hour in "about" the center of the road; "It did not get back in line." The evidence warranted a finding that Bessey was negligent in the operation of the automobile.

The defendant's first exception is to the refusal of the trial judge to allow in each case a motion for a directed verdict for the defendant, and he has argued that it should have been allowed on the ground that there was no evidence of negligence on the part of the defendant that was a contributory cause of the collision. We think there was no error. The jury could have found actionable negligence on the part of the defendant in the manner of his operation of the truck, as to its position on the road, and the rate of speed. *Wall* v. *King*, 280 Mass. 577. *Mazmanian* v. *Kuken*, 285 Mass. 516. G. L. (Ter. Ed.) c. 89, § 1; c. 90, § 17. The cases are distinguishable from *Baker* v. *Davis*, 299 Mass. 345.

There was no error in the refusal to give the defendant's requests which called for rulings, as matter of law, that the intestates and Mrs. Berry were guilty of contributory negligence. Even if, under Rule 71 of the Superior Court (1932), the point had been properly raised by a motion (see *Carp* v. *Kaplan*, 251 Mass. 225, 228; *Bernier* v. *Pittsfield Coal Gas Co.* 257 Mass. 188, 190; compare *Bray* v.

*Hickman*, 263 Mass. 409, 416, 417), it could not have been sustained. The plaintiff Berry was riding in the front seat on Bessey's right, with a seven-year-old Bessey child seated in her lap. She testified that, when the automobile ahead came to an abrupt stop, Bessey turned to the left to pass "this car that had stopped and this truck met their . . . car about the time they got by this car head on. That is all she remembers"; that she first saw the truck as Bessey "turned out to go by this car" when it was "once and a half the length of the court room distance"; that Bessey had all the privileges of a driver to drive the automobile and that she paid attention to what he was doing; that when she saw him turn out and when she saw the truck, she said nothing; that she did not anticipate there would be an accident because it happened so quickly, "You wouldn't have time to breathe hardly, wouldn't have time to think or wonder whether there was going to be an accident or not"; and that at the time she did not interfere with Bessey's driving of the automobile. Bessey's wife was seated on the right side of the rear seat with her son John, the other intestate, beside her. The only testimony disclosed by the record that relates in any way to what either intestate may or may not have done, or have been doing, came from another son, who was sitting on the rear seat beside the intestate John, and who testified that he did not know what John was doing just before the accident, "He was just sitting"; that he (the witness) did not see the truck approaching until his father turned out to pass the automobile that was ahead; that to the best of his knowledge, his mother was "sitting there looking straight ahead"; and that there was no conversation by his mother or the boys before the accident. A witness for the defendant testified that Bessey told him that one of his children had said "something about 'Look, daddy', something like that"; that he looked and "as he brought his vision back on the road he saw this car stopped in front of him." The question of the due care of Mrs. Bessey and Mrs. Berry was for the jury, as also was that of the son John, if there was any evidence for the jury of contributory negligence

on his part. *Lambert* v. *Eastern Massachusetts Street Railway*, 240 Mass. 495, 499. *Gallup* v. *Lazott*, 271 Mass. 406, 409. *Leveillee* v. *Wright*, 300 Mass. 382, 390. G. L. (Ter. Ed.) c. 231, § 85. Compare *Elfman* v. *Kronenberg*, 299 Mass. 492. The cases are distinguishable from *Pigeon* v. *Massachusetts Northeastern Street Railway*, 230 Mass. 392, *Thorp* v. *Boston Elevated Railway*, 259 Mass. 415, *Oppenheim* v. *Barkin*, 262 Mass. 281, and *Caron* v. *Lynn Sand & Stone Co.* 270 Mass. 340.

A request in each case asked the judge to state to the jury that the evidence "indicates" that all care of the intestates, and of Mrs. Berry, was surrendered by each to Bessey. We think the judge was right in refusing to give this request in that form. *Commonwealth* v. *Barry*, 9 Allen, 276. *McKean* v. *Salem*, 148 Mass. 109. G. L. (Ter. Ed.) c. 231, § 81.*

The trial judge was not required to give the request that the intestate John submitted himself to the care of his father and was bound by his father's unlawful and negligent acts. The request calls for the expression of a conclusion on the part of the judge that the father's acts were unlawful and negligent.

The defendant excepted, in the case of John Bessey, to what we take to be that portion of the judge's charge in which he ruled, as matter of law, that the defendant had not sustained the burden of proving that John Bessey was guilty of contributory negligence, and that "John Bessey's administrator has a right to recover here by proving that the defendant was negligent and that his negligence contributed to the death of John."

This intestate was nine years of age at the time of the accident. There was no evidence as to what he was doing or not doing just before the accident except that "He was just sitting" there, and that there was no conversation with his mother or between her sons before the accident.

It is well settled in this Commonwealth that, in an

---

* Section 81 of G. L. (Ter. Ed.) c. 231, provides: "The courts shall not charge juries with respect to matters of fact, but they may state the testimony and the law." — REPORTER.

action of tort to recover for the negligence of a third person, and where the plaintiff is too young to exercise care for his own safety, the negligence, if any, of his custodian will be imputed to the plaintiff. *Tucker* v. *Ryan*, 298 Mass. 282, and cases cited. In many of the cases such a plaintiff is referred to by the court as one of tender years. See *Wright* v. *Malden & Melrose Railroad*, 4 Allen, 283. "There is no hard and fast rule that at any particular age a minor is presumed to be able to comprehend risks or to be capable of negligence. Extreme cases can be stated which obviously fall on one side or the other of the line." *Berdos* v. *Tremont & Suffolk Mills*, 209 Mass. 489, 494. In the case of *Young* v. *Small*, 188 Mass. 4, where the plaintiff was nine years of age, it was said at page 5: "It may be conceded that she had reached an age of sufficient maturity to be allowed to use the public ways to go to and from school without negligence being imputed to her parents, yet she was required to exercise such a degree of care as reasonably was to be expected of a child of her years." *McDermott* v. *Boston Elevated Railway*, 184 Mass. 126, 128. In the case of *Fayard* v. *Morrissey*, 281 Mass. 166, where the plaintiff was about eight years and one month old, the court said at pages 168–169: "He was of an age to be rightfully on the street unattended (see *Jean* v. *Nester*, 261 Mass. 442, *Burns* v. *F. Knight & Son Corp.* 213 Mass. 510, *Giaccobe* v. *Boston Elevated Railway*, 215 Mass. 224, where the children involved were between seven and eight years old). The plaintiff was not guilty of contributory negligence if he used the care of the ordinarily prudent boy of his age." *Sullivan* v. *Boston Elevated Railway*, 192 Mass. 37, 43. See *Casey* v. *Boston Elevated Railway*, 197 Mass. 440; *Russo* v. *Charles S. Brown Co.* 198 Mass. 473, 476; *Milbury* v. *Turner Centre System*, 274 Mass. 358, 363. There is no evidence that this intestate was negligent. See *Elfman* v. *Krönenberg*, 299 Mass. 492.

From what has been said, we think it follows that no negligence of Bessey was imputable to his son John. See *Fayard* v. *Morrissey*, 281 Mass. 166, 168, 169. The latter was merely sitting in an automobile at the time of the

injury which resulted in his death, and was old enough to take care of himself as a passenger in that situation without custodial care. The case at bar is distinguishable from *Gallagher* v. *Johnson*, 237 Mass. 455, and the cases cited, where it was held that a boy, four years and two months old, riding on the seat beside his father, who was driving an automobile which was in collision with another automobile, was too young to be capable of exercising any self-reliant care for his own safety.

The judge instructed the jury that the plaintiffs could recover upon proof that negligence of the defendant bore causal relation to the injuries unless the defendant proved by the preponderance of the evidence that the negligence of Mrs. Berry or the intestates was a contributing factor in the respective cases, and further, as already pointed out, that there was no evidence of such negligence on the part of the intestate John.

The only questions remaining are those raised by these instructions and by the refusal of the judge to submit to the jury the issue whether the persons injured, or any of them, voluntarily and without constraint made a complete surrender of all care of his or her person to the caution of Bessey.

In the case of *Shultz* v. *Old Colony Street Railway*, 193 Mass. 309, decided in January, 1907, there was evidence that the plaintiff was being driven in a carriage by a friend who owned the horse and carriage and "was giving her [the plaintiff] a ride to her home." The plaintiff in no way interfered with her friend's driving, in no manner controlled him or directed how he should drive, but left the driving to him. The carriage was within the tracks of the defendant's railway and was run into from behind by one of its cars as the carriage was leaving the track. The trial judge declined to give the following requests for rulings of the plaintiff: "1. That, if the plaintiff was not negligent in riding in the carriage and if the plaintiff in no way controlled the driver or directed the manner in which he should drive, then the plaintiff can recover if the defendant's motorman was negligent and if his neg-

ligence in any way contributed to the collision, and the fact that the driver of the carriage in which the plaintiff sat might also have been negligent is immaterial. 2. That, if at the time of this accident the plaintiff was in the exercise of due care and the defendant's motorman was not, the verdict must be for the plaintiff." The jury was instructed that, in the circumstances disclosed, the driver was the one whose conduct was to be inquired into and that, if he was careless in driving and his carelessness contributed to the plaintiff's injuries, then the plaintiff was bound by his carelessness and could not recover; but that, if he was careful in driving and she was careful also, the question of due care on the part of the plaintiff would be sustained. The jury returned a verdict for the defendant, and the plaintiff's exceptions were to the refusal to rule as requested and to the charge of the judge. The court, after an extensive review of the cases in this Commonwealth and elsewhere, held that, in view of the facts of the case, the requests for rulings were not correct propositions of law, and were properly refused, but that the portion of the charge excepted to failed to express with accuracy and fullness the rights of the plaintiff and the liability of the defendant to her, saying at pages 323 and 324: "The jury were instructed to treat the plaintiff as identified with the driver, and burdened with his negligence. For the reasons we have stated and under the circumstances disclosed, this was not an accurate statement of the law." At the outset of the opinion the court said, at page 312: "This case fairly raises the question as to whether the negligence of the driver of a vehicle is to be imputed to a guest, riding with him gratuitously and personally in the exercise of all the care, which ordinary caution requires." It then goes on to say that the first case in our own court that occasioned any discussion as to the "identification" of a passenger with a driver was *Allyn* v. *Boston & Albany Railroad*, 105 Mass. 77. In that case, the plaintiff sought to recover for injuries sustained when a train of the defendant came into collision at a public railroad crossing with a wagon in which he was

being driven by one Haskell. At the beginning of the
opinion the court stated that the rules of law that must
govern the case were well settled; that the plaintiff was
required to prove not only that the defendants were neg-
ligent but also that his own negligence did not in any
degree contribute to his injury. After stating that the
burden was upon the plaintiff (as it then was) to show
affirmatively that he was in the exercise of due care, the
court said, at page 78: "Applying these principles to the
case at bar, we are of opinion that the plaintiff failed to
sustain the burden of showing that he was in the exercise
of due care at the time of his injury." After describing
the surroundings and the visibility, the court said that
the plaintiff testified that he did not see where he was
until the horse was on the track, and that he did not look
up, and that there was no evidence that Haskell looked
to see if a train was approaching. It then said that if one
approaching a railroad crossing does not use the precau-
tion of looking to see if a train is approaching, such conduct
is careless, and that (page 79) "there is not a scintilla of
evidence that either of the parties used this reasonable
precaution; and the case falls within the principle of
*Butterfield* v. *Western Railroad Co.* 10 Allen, 532." The
court then proceeded to demonstrate that the plaintiff was
not in the exercise of due care because "it is obvious that
any man who had his sight and used it must have seen
that he was approaching a railroad crossing. If the plain-
tiff did not see it, it shows conclusively that he was not
using the circumspection and care which every prudent
man does and is required to use in travelling. It is absurd
to suppose that a traveller using ordinary care could, in
the daytime and with nothing to interfere with his vision,
get upon this railroad crossing without seeing it." It
added, unnecessarily for the purposes of the decision, as
it seems, that "If the plaintiff failed to use the care which
prudence required, relying upon the vigilance of his com-
panion, he must prove that Haskell was in the exercise
of due care, not only in the management of his horse,
but in using the necessary precautions to guard against

danger from passing trains," citing *Commonwealth* v. *Fitchburg Railroad,* 10 Allen, 189, and *Thorogood* v. *Bryan,* 8 C. B. 115. This dictum does not seem to be a correct statement of abstract law, for it has been decided that, in similar circumstances, a plaintiff could not recover upon proof of the due care of the driver if the plaintiff was personally negligent. *Barber* v. *Boston Elevated Railway,* 239 Mass. 62, 64. See *Lambert* v. *Eastern Massachusetts Street Railway,* 240 Mass. 495. In the *Butterfield* case, cited as authority in the *Allyn* case, there was but one plaintiff and he was injured while travelling on foot across the railroad crossing by reason of a collision with a passing train. On the facts, it was held that there was no evidence of due care on his part. The case of *Commonwealth* v. *Fitchburg Railroad,* 10 Allen, 189, was an indictment against the railroad for killing one Hapgood, when he was travelling with a companion in a horse drawn vehicle on a public crossing. It was the contention of the defendant that the evidence was insufficient to show due care upon the part of Hapgood. The court, however, at page 191, discusses the conduct of Hapgood and his companion, saying: "If the evidence made it certain that Hapgood or his companion saw the train approaching in season to avoid a collision, and yet persisted in passing just before it, the court might determine that their conduct was careless. . . . Or if the evidence made it certain that Hapgood or his companion might have seen the approaching train in season to avoid a collision by the use of ordinary care, the court might determine that they were careless." Throughout the opinion, the conduct of Hapgood and his companion is dealt with without differentiation. Nothing is said about imputability or identification. The exceptions of the defendant were overruled, the jury having returned a verdict of guilty.

In the case of *Randolph* v. *O'Riordon,* 155 Mass. 331, the plaintiffs, husband and wife, sued one Bryant, owner of the hack in which they were riding, and one O'Riordon, the owner of a wagon which was in collision with the hack. The jury returned a verdict for Bryant and against O'Rior-

don, and O'Riordon excepted. The court said, at page 336, that O'Riordon's "claim rests on the position that the negligence, if any, of the driver [of the hack] was to be imputed to the plaintiffs, and that again on the position that the relation of servant and master existed between him and them. If the plaintiffs and the driver of Bryant's hack had been total strangers to each other, it is obvious that it would have been no defence for O'Riordon to say that the negligence of Bryant's driver contributed to the accident. That defence could not be availed of by him unless there was some relation between the plaintiffs and the driver which would make them responsible for or identified with his acts; and in the present case that relation, if it existed at all, must have been the relation of master and servant." The opinion goes on to repudiate the case of *Thorogood* v. *Bryan*, 8 C. B. 115. But in speaking of the case of *Allyn* v. *Boston & Albany Railroad*, 105 Mass. 77, it is said that in that case it did not appear how the plaintiff and Haskell came to be riding together, and the "court held, and rightly so, that 'if the plaintiff failed to use the care which prudence required, relying upon the vigilance of his companion, he must prove that Haskell was in the exercise of due care, not only in the management of his horse, but in using the necessary precautions to guard against danger from passing trains.' This was very different from saying that Haskell's negligence was to be imputed to the plaintiff, if he had been a passenger in a hack of which Haskell was the driver. It was merely saying that if, in a dangerous place, one person trusted another person to look out for him, he must show that such person used due care." All that this case decided on this particular point was that the relation of master and servant did not exist between the plaintiffs and the driver of the hack, and that the negligence of Bryant's driver was not to be imputed to the plaintiffs.

In the case of *Murray* v. *Boston Ice Co.* 180 Mass. 165, the plaintiff was injured by being thrown from a wagon driven by another when in collision with the defendant's cart, and he obtained a verdict. The defendant asked in-

structions to the effect that if the accident was not due to the negligence of the defendant's driver alone, but was also due partly to the negligence of the plaintiff's driver, the plaintiff could not recover. This the judge refused to rule, but did rule that if the plaintiff "trusted to . . . [his driver] the sole care and management of the team in which they were riding, and relied solely on the care and vigilance of . . . [his driver]" then he must show due care on the part of his driver. The defendant excepted, as we take it, to the refusal to rule as requested. The decision was by Holmes, C.J., who, in referring to the case of *Allyn* v. *Boston & Albany Railroad*, 105 Mass. 77, said that it was recognized, or at least was not overruled in terms, by *Randolph* v. *O'Riordon;* he also said (page 167), "We do not mean to give that case [*Allyn* v. *Boston & Albany Railroad*] any further sanction than it now has, but Allyn's injury was due to a failure to take sufficient precautions in crossing a railroad. . . . Except upon a strained interpretation of the plaintiff's testimony, . . . the instruction would seem to sanction an identification of passenger and driver when sitting together, although repudiating it as a general rule. It may be that in this State the doctrine of identification is not confined strictly to the law of master and servant. . . . but the principle does not extend to passengers on vehicles. Cases which suggest it are to be explained in other ways." The decision was that the instruction, which was given, that if the plaintiff "trusted to . . . [his driver] the sole care and management of the team in which they were riding, and relied solely on the care and vigilance of . . . [his driver]" then he must show due care on the driver's part, was at least sufficiently favorable to the defendant. In the *Shultz* case, it is said that this quoted instruction was held to be correct. This must have been an inadvertence.

The discussion of the case of *Yarnold* v. *Bowers*, 186 Mass. 396, in the *Shultz* case, does not disclose that the court in the *Yarnold* case, after reciting the facts, said (page 398), "We see no evidence of negligence on the part of . . . [the defendants]." Obviously this was decisive of the case,

but the court goes on to say (pages 398–399), "and it seems to us plain that Thorn [who was rowing the boat from which the plaintiff's intestate fell overboard when the rowboat and the defendants' steamer were in collision] was not in the exercise of due care. The plaintiff contends that his intestate is not to be affected by Thorn's negligence. But the case of *Allyn* v. *Boston & Albany Railroad*, 105 Mass. 77, is decisive on that point. As already observed, the uncontradicted evidence showed that Thorn did all the rowing and had charge of the boat with the consent of the plaintiff's intestate. Under such circumstances the plaintiff was bound to show that Thorn was in the exercise of due care as a condition of recovery. There is nothing in *Murray* v. *Boston Ice Co.* 180 Mass. 165, or *Randolph* v. *O'Riordon*, 155 Mass. 331, which affects *Allyn* v. *Boston & Albany Railroad* as applied to the circumstances of this case." The opinion states that Thorn did all the rowing and (page 397) "had charge of the boat with the consent of the plaintiff's intestate," who was standing up at the time of the collision, and that the intestate (page 398) "would in all probability have escaped if he had been sitting down instead of standing up." There is no other observation as to the conduct of the plaintiff's intestate or its consequences other than in the portion of the opinion hereinbefore quoted.

Eight other cases in this Commonwealth involving drivers and guests are collected in the *Shultz* case at page 313, and the implication is that they do not bear upon the issue to be decided in the latter case. We think, however, that some of them require more than a passing notice.

In *Robbins* v. *Fitchburg Railroad*, 161 Mass. 145, Robbins and his companion, the other plaintiff, were injured by being thrown from a buggy at a railroad crossing. Robbins was the driver. The trial judge ruled that the plaintiffs were not in the exercise of due care and directed a verdict for the defendant. The court said that it could not be said that the plaintiffs were negligent at any time prior to the moment they first saw the train. Thereafter, in the opinion, the conduct of Robbins alone was discussed and the conclusion was (page 148): "It seems to us that it cannot be

said, as a matter of law, that the plaintiffs had failed to show that Robbins was in the exercise of due care. The plaintiffs were entitled to go to the jury upon this question."

In *Creavin* v. *Newton Street Railway*, 176 Mass. 529, the only question was whether there was evidence that the plaintiffs were in the exercise of due care. They were injured in a collision between the wagon in which they were riding, driven by the plaintiff Creavin, and an electric car. There was evidence that both plaintiffs looked to see if a car was coming before they reached the defendant's tracks, and that they thought they had ample time to cross. There is no discussion of the individual conduct of the plaintiffs. The court held that the evidence warranted a finding that they were in the exercise of due care.

In *Sullivan* v. *Boston Elevated Railway*, 185 Mass. 602, the plaintiff Knox was thrown from the wagon driven by Sullivan when in collision with a street car. Knox testified (page 606) that "he did not interfere at all with the driving, but trusted himself entirely to Sullivan." The court said that, under the rule in the *Allyn* case, "if the plaintiff failed to use the care which prudence required, relying upon the vigilance of his companion, he must prove that . . . [his companion] was in the exercise of due care." The plaintiff Knox had a right to go to the jury on the question whether Sullivan exercised due care.

In *Evensen* v. *Lexington & Boston Street Railway*, 187 Mass. 77, it was alleged that the death of the plaintiff's intestate was caused by a collision between the defendant's car and a wagon in which the intestate was being driven by one Helchier, whose guest the intestate was. The court said (page 78) that the evidence tended to show that the intestate "had intrusted himself to the care of the driver. The question therefore upon this branch of the case is whether Helchier was in the exercise of due care." There is no reference in the opinion to the question of the due care of anyone other than Helchier.

In *Halloran* v. *Worcester Consolidated Street Railway*, 192 Mass. 104, the plaintiff was riding in a wagon by invitation of its driver. There was evidence that, prior to the

collision with the defendant's car, both the plaintiff and the driver looked and saw no car, listened and heard nothing. The court said (page 105): "We are of opinion on the evidence in the case that the questions of due care on the part of the plaintiff and the driver of the wagon . . . were for the jury."

In *Kane* v. *Boston Elevated Railway*, 192 Mass. 386, the plaintiff was riding in a pung with the driver's permission. The court said, at page 387, that the "plaintiff cannot recover if either his own negligence or that of the driver contributed to the happening of the accident. *Evensen* v. *Lexington & Boston Street Railway*, 187 Mass. 77, 78. *Yarnold* v. *Bowers*, 186 Mass. 396, 398, and cases there cited." It will be noticed that in the *Evensen* case, where the plaintiff entrusted the care of himself to the driver, the court said the "question therefore" was whether the driver was in the exercise of due care.

The law was in this condition when the court was called upon to decide the *Shultz* case. After stating the question involved in that case (page 312), "whether the negligence of the driver of a vehicle is to be imputed to a guest, riding with him gratuitously and personally in the exercise of all the care, which ordinary caution requires," the court proceeded to deal with the question of imputed negligence with a careful review of the decisions in other jurisdictions and abundant citations dealing with the doctrine enunciated in *Thorogood* v. *Bryan*, 8 C. B. 115, see 8 L. R. A. (N. S.) 597. The fiction of "identification" as well as that of any implied agency was destroyed. At pages 321–322, the court said: "Under the conditions existing in the case at bar, recovery by the plaintiff can only be prevented by judicially imposing upon the purely humane, social or benevolent act of hospitality the fiction of assuming the contractual relation of principal and agent between the guest and host. Such relation in fact does not exist. . . . Such a fiction ought not to be resorted to, except under the imperative requirement of some technical legal rule or to accomplish a manifest justice. Its invocation in the present case is not made necessary by such rule and its application only serves to

protect a wrongdoer from the natural consequences of his acts, so that it fails of justification on both grounds. . . . It is neither just nor reasonable nor consonant with any principle of jurisprudence to require the plaintiff to go remediless for a wrong committed against her by the defendant, which she neither contributed to, was responsible for, nor could have prevented. To send her out of court would be to punish the innocent and discharge the guilty."

The learned justice then proceeded to state a general rule, on pages 322 and 323, as follows: "The rule fairly deducible from our own cases, and supported by the great weight of authority by courts of other jurisdictions is that where an adult person, possessing all his faculties and personally in the exercise of that degree of care, which common prudence requires under all the attending circumstances, is injured through the negligence of some third person and the concurring negligence of one with whom the plaintiff is riding as guest or companion, between whom and the plaintiff the relation of master and servant or principal and agent, or mutual responsibility in a common enterprise, does not in fact exist, the plaintiff being at the time in no position to exercise authority or control over the driver, then the negligence of the driver is not imputable to the injured person, but the latter is entitled to recover against the one through whose wrong his injuries were sustained. Disregarding the passenger's own due care, the test whether the negligence of the driver is to be imputed to the one riding depends upon the latter's control or right of control of the actions of the driver, so as to constitute in fact the relation of principal and agent or master and servant, *or his voluntary, unconstrained, non-contractual surrender of all care for himself to the caution of the driver.* [Italics ours.] Applying this statement of the law to the present case, the result is that the plaintiff would not be entitled to recover if in the exercise of common prudence she ought to have given some warning to the driver of carelessness on his part, which she observed or might have observed in exercising due care for her own safety, *nor if she negligently abandoned the exercise of her own faculties and trusted entirely*

*to the vigilance and care of the driver. She cannot hide behind*
*the fact that another is driving the vehicle in which she is riding,*
*and thus relieve herself of her own negligence.* [Italics ours.]
What degree of care she should have exercised, in accepting
the invitation to ride, or in observing and calling to the
attention of the driver perils unnoticed by him, depends
upon the circumstances at the time of the injury. On the
other hand, she would be permitted to recover if, in entering
and continuing in the conveyance, she acted with reasonable
caution, and had no ground to suspect incompetency and
no cause to anticipate negligence on the part of the driver,
and if the impending danger, although in part produced
by the driver, was so sudden or of such a character as not
to permit or require her to do any act for her own protec-
tion."

It is our opinion that those parts of these quoted para-
graphs where it is said "or his voluntary, unconstrained,
non-contractual surrender of all care for himself to the
caution of the driver," and "nor if she negligently abandoned
the exercise of her own faculties and trusted entirely to the
vigilance and care of the driver," were not necessary to the
decision of the case, unless it was the purpose to point out
that a negligent guest could not recover merely by proving
due care on the part of his driver. In the case of *Miller* v.
*Boston & Northern Street Railway*, 197 Mass. 535, decided
in February, 1908, the plaintiff was riding in a sleigh with
her cousin, who was driving. The horse ran away and the
plaintiff was injured. The defendant asked the trial judge
to rule that if the plaintiff entrusted the care and manage-
ment of the horse and sleigh to the driver and relied solely
upon him for her safety, then, in order to recover, she must
show that he was, in effect, in the exercise of due care.
The request was held to have been refused rightly, and it
was said in an opinion by Knowlton, C.J., without dis-
cussion, that the instructions given on the point were
correct and sufficient, and that they followed closely the
doctrine fully stated and explained in the *Shultz* case.
The instructions given contained no reference to voluntary
surrender and dealt wholly with the conduct of the plaintiff

in terms of due care.  See *Chadbourne* v. *Springfield Street Railway*, 199 Mass. 574; *Ingalls* v. *Lexington & Boston Street Railway*, 205 Mass. 73; *Littlefield* v. *Gilman*, 207 Mass. 539; *Bullard* v. *Boston Elevated Railway*, 226 Mass. 262; *Salisbury* v. *Boston Elevated Railway*, 239 Mass. 430; *Dumas* v. *Ward*, 251 Mass. 497; *Maidman* v. *Rose*, 253 Mass. 594; *Pitman & Brown Co.* v. *Eastern Massachusetts Street Railway*, 255 Mass. 292.  It is not easy to reconcile the *Shultz* and *Miller* cases.  If anything, we think that the doctrine of voluntary surrender, if sound, was more applicable on the facts to the *Miller* case than to the *Shultz* case.  It would serve no useful purpose to review in detail the cases in this Commonwealth in which the doctrine of voluntary surrender has been invoked and applied.  Many, if not all, are appended in a footnote.*

In the *Shultz* case, the doctrine of imputed negligence arising from a voluntary surrender was referred to as if something apart from the "passenger's" own due care, where the rule was stated "disregarding the passenger's own due care."  Page 323.  But this was closely followed by the statement that an abandonment of care must be a negligent one.  We think it has been assumed generally in the cases that have followed the *Shultz* case that, if a complete surrender on the part of a plaintiff of all care of his person is to be of consequence, it must be a negligent surrender. See *Lambert* v. *Eastern Massachusetts Street Railway*, 240 Mass. 495, 500; *Slowik* v. *Union Street Railway*, 282 Mass. 249.  And it has been held, as we think rightly, to be but one aspect of contributory negligence.  *Oppenheim* v. *Barkin*, 262 Mass. 281.  *Pendleton* v. *Boston Elevated Rail-*

---

* *Peabody* v. *Haverhill, Georgetown & Danvers Street Railway*, 200 Mass. 277, 280.  *Lundergan* v. *New York Central & Hudson River Railroad*, 203 Mass. 460, 465.  *Fogg* v. *New York, New Haven & Hartford Railroad*, 223 Mass. 444, 448.  *Bullard* v. *Boston Elevated Railway*, 226 Mass. 262, 264, 265. *Griffin* v. *Hustis*, 234 Mass. 95, 99.  *Morel* v. *New York, New Haven & Hartford Railroad*, 238 Mass. 392, 394, 395.  *Lambert* v. *Eastern Massachusetts Street Railway*, 240 Mass. 495, 500.  *Stemler* v. *Cady*, 246 Mass. 384, 386. *Boyd* v. *Ellison*, 248 Mass. 250, 253.  *Thorp* v. *Boston Elevated Railway*, 259 Mass. 415, 419.  *Oppenheim* v. *Barkin*, 262 Mass. 281, 283, 284.  *Perry* v. *Stanfield*, 278 Mass. 563, 572.  *Cycz* v. *Dugal*, 295 Mass. 417, 418.  *O'Toole*, v. *Magoon*, 295 Mass. 527, 530.  *Haberger* v. *Carver*, 297 Mass. 435, 440. *Gibbons* v. *Denoncourt*, 297 Mass. 448, 454.

*way,* 266 Mass. 214. *Schusterman* v. *Rosen,* 280 Mass. 582, 587. *Monaghan* v. *Keith Oil Corp.* 281 Mass. 129, 138.

In dealing with the burden of proof where the question of voluntary surrender has been involved, although in *Bullard* v. *Boston Elevated Railway,* 226 Mass. 262, at 265, the court said that inasmuch as no negligence was imputable to the plaintiffs, the due care statute, so called (G. L. [Ter. Ed.] c. 231, § 85), became applicable, nevertheless in the late case of *Stowe* v. *Mason,* 289 Mass. 577, at pages 581–582, it was said: "There is nothing in the evidence which compelled the judge to rule as matter of law, against the burden of proof, that the plaintiff abandoned all care for herself to the care of the driver or that she was guilty of contributory negligence of any kind." See *Gallagher* v. *Johnson,* 237 Mass. 455; *Pitman & Brown Co.* v. *Eastern Massachusetts Street Railway,* 255 Mass. 292. If voluntary surrender of one's care is something apart from his own due care, it cannot be that our statute (G. L. [Ter. Ed.] c. 231, § 85) as to the burden of proof on the issue of the plaintiff's due care applies; but if the voluntary surrender must be a negligent one to be regarded as contributory negligence, then there is no difficulty in its application.

In some of the cases evidence of conduct on the part of the plaintiffs that clearly was nothing more than evidence of contributory negligence has been held to permit a finding of voluntary surrender. An examination of these cases leads to the conclusion that this evidence, if believed by a jury, would bar the plaintiffs from recovery, and that any reference to a voluntary surrender based upon such evidence was unnecessary. See *Caron* v. *Lynn Sand & Stone Co.* 270 Mass. 340; *Monaghan* v. *Keith Oil Corp.* 281 Mass. 129. Compare *Laffey* v. *Mullen,* 275 Mass. 277.

The doctrine of voluntary surrender as enunciated in the *Shultz* case is that it amounts to a test which is to be applied "disregarding the passenger's own due care," with the result that, if a negligent surrender is found, the negligence of the plaintiff's driver is to be imputed to the former, just as it is in cases where the relation of principal and agent or master and servant or parent and child of tender

years exists.   The use of the word "non-contractual" seems to imply a relation entirely different from that in the cases of principal and agent or master and servant, but one which is followed by the same consequences.   The word "voluntary" suggests a freedom of choice and a free expression of the will.   "Unconstrained" suggests something which has not been compelled or forced or brought about by necessity.   It may be that cases such as *Ingalls* v. *Lexington & Boston Street Railway*, 205 Mass. 73, and *Bullard* v. *Boston Elevated Railway*, 226 Mass. 262, are illustrations of the opposite of unconstrained.   In the first case the court said, at page 76, that the guests are often "so situated as to be obliged to trust everything to the driver of the vehicle in which they are riding"; and in the latter case, at page 264, that, as occupants of a limousine with a glass partition separating the chauffeur from them, there was little they could do for their own safety, "even in the exercise of a high degree of care," and that there was no voluntary surrender on their part of all care for themselves and absolute reliance on the caution of the chauffeur in such sense as to charge them with the responsibility for his conduct.   It was pointed out, however, that "The circumstances are quite different from those of a guest in a small horse drawn vehicle, where there is considerable range for the exercise of one's own faculties and where *a complete abandonment of effort toward due care and blind dependence on the driver* [italics ours] might be fraught with disastrous consequences."   If we are correct in our assumption that these cases and their like illustrate constraint, it may be observed that there is no constraint when the occupants voluntarily enter either the limousine or the small horse-drawn vehicle.   It does not seem to be a matter of justice, after they voluntarily enter the vehicles, to penalize the one and absolve the other, and if there were no doctrine of voluntary surrender, there would be no occasion for any such distinction.

It is settled that, if a plaintiff is in the exercise of due care, the negligence of the driver of the vehicle in which he is riding merely as a guest is not imputable to him.

*Littlefield* v. *Gilman,* 207 Mass. 539, 541.  By the over-
whelming weight of authority, in other jurisdictions a
driver's negligence is not imputed to his guest merely be-
cause the latter voluntarily surrenders all care for his own
safety to the driver, the test being, as far as the guest's
conduct is concerned, whether any negligence of his has
contributed to his injury.

For over thirty years the doctrine of the *Shultz* case as
to voluntary surrender has been a disturbing factor in the
jurisprudence of this Commonwealth.  Judges have been
troubled in their efforts to instruct jurors or themselves
in accordance with the principle there enunciated.  Negli-
gence of a guest has been divided into (a) ordinary negli-
gence, which bars recovery if it contributes to the injury,
and is inconsequential otherwise; and (b) negligent sur-
render of all care in reliance upon the care of the driver
of the vehicle in which the guest is riding, which has been
thought to have the very different result of imputing to
the guest any contributory negligence of the driver.  We
think we are right in saying that the statement in the
*Allyn* case, hereinbefore quoted, was unnecessary and a
mere dictum.  It accounts for much that was said in the
later cases that preceded the *Shultz* case.  *Thorogood* v.
*Bryan,* 8 C. B. 115, long since overruled, was relied upon
in the *Allyn* case.  It is unfortunate, at least, that, when
the English case was repudiated by this court, the dicta
that it inspired did not pass with it.  It is true that the
opinion in the *Shultz* case, in one place, seems to add an
additional relationship to those already recognized, that is,
one arising out of a voluntary surrender, from which im-
putability between driver and guest may arise, but it goes
on to point out that such a surrender does not relieve a
plaintiff of his own negligence.  "She cannot hide behind
the fact that another is driving the vehicle in which she
is riding, and thus relieve herself of her own negligence."
This is followed by a careful statement of what facts may
constitute that negligence and the clear conclusion that a
plaintiff may recover if such facts do not appear.  It would
seem that the court, after pointing out the injustice of

imputed negligence in clear and unanswerable language, proceeded to set up a new formula of imputability, only to destroy it by the concluding words of the opinion. All that seems to be left of the doctrine of voluntary surrender is that, if a plaintiff is contributorily negligent, he cannot recover. The formula of the *Shultz* case did not disturb Knowlton, C.J., in the *Miller* case. When the *Shultz* case was decided, some of the cases that had preceded it had inquired of the conduct of both guest and driver; the *Evensen* case had looked only to the conduct of the driver. Some cases, harking back to the *Allyn* case, contained a germ of imputability without giving it that name. We think that one result that the *Shultz* case should have accomplished was to destroy that germ. If it failed in its purpose it is not too late to complete the task.

Upon careful consideration, we are of the opinion that the administration of justice will be better served if the so called doctrine of voluntary, noncontractual surrender of all care is eliminated from our law, so that, in cases where a guest in a private conveyance, being of sufficient age and capacity to exercise care for his own safety, and being in none of the relationships to the driver that cause the latter's negligence to be imputed to him (such as master or participant in a joint enterprise), is injured because of the concurrent negligence of the driver and a third person, the inquiry in an action against the third person, whether the guest may recover in such circumstances, will be gone into no further than to decide whether he was guilty of contributory negligence, and that the so called doctrine of voluntary, unconstrained, and noncontractual surrender will no longer be applicable to such situations.

From what has been said, the conclusion is inevitable that there was no error in the cases at bar. Under the instructions given, the jury could not warrantably have returned verdicts for Mrs. Bessey's administrator and Mrs. Berry unless they found that both Mrs. Bessey and Mrs. Berry were in the exercise of due care, and that there was no negligent act or failure to act on their part that had any causal relation to the injuries. We must assume that

the jury followed the instructions of the judge, and that, in returning verdicts for the plaintiffs, it must have found that due care was exercised, although no protest was made and no warning given, as to the rate of speed or the act of Bessey in turning to the left. We are of the opinion that in the case of John Bessey there was no error in the instruction of the trial judge to the effect that there could be a recovery by proving that the defendant was negligent and that his negligence contributed to the death of John Bessey.

*Exceptions overruled.*